**FREMONT INDEMNITY COMPANY,**
**Plaintiff/Cross-Respondent,**

v.

**LAWTON–BYRNE–BRUNER INS. AGENCY CO., Defendant/Third Party Plaintiff/Respondent/Cross-Appellant,**

v.

**ILLINOIS UNION INSURANCE CO., Third-Party Defendant/Appellant.**

Nos. 49299, 49254.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 29, 1985.

Motion for Rehearing and/or
Transfer Denied Dec. 10, 1985.

Mark T. Keaney, Lewis & Rice, Edward S. Meyer & Laura B. Allen, Evans & Dixon, St. Louis, for appellants.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for respondent.

PUDLOWSKI, Judge.

Fremont Indemnity Company ("Fremont"), respondent, brought this action for a declaratory judgment contending that its insurance policy afforded no coverage for Lawton-Byrne-Bruner Insurance Agency Company ("LBB"), respondent/cross-appellant, in an action against LBB by St. Louis-Little Rock Hospitals, Inc.[1] LBB then filed a third party petition against Illinois Union Insurance Company ("Illinois Union"), appellant, alleging that in the event Fremont prevailed, the policy of Illinois Union should provide the coverage. The trial court entered judgment in favor of Fremont and LBB and against Illinois Union. We reverse.

LBB is a Missouri corporation engaged in the business of selling or brokering insurance. From September 1, 1981 to September 1, 1982, Illinois Union provided LBB with errors and omissions insurance. From September 1, 1982 to September 1, 1983, Fremont provided LBB's errors and omissions coverage. Both Illinois Union and Fremont's policies were "claims-made" policies.

The present case has its origin in the lawsuit brought against LBB by St. Louis-Little Rock Hospitals ("the Hospital") on September 20, 1982. LBB had acted as the Hospital's insurance broker for over thirty years and provided it with insurance through the St. Paul Insurance Company since 1972. In its suit, the Hospital alleged that LBB failed to obtain cost efficient insurance for it for several prior years.

The dispute between LBB and the Hospital arose from the Hospital's request for bids for renewal of insurance coverage which was expiring on April 1, 1982. LBB, along with four other competitors, submitted bids. LBB submitted its bid in two parts because the Hospital was actually composed of two distinct facilities, one in Little Rock, the other in St. Louis. LBB was the successful bidder for the Little Rock facility.

LBB's renewal bid was $65,000.00 less than the previous year's premium according to the testimony of Miss Jill Horan, Coordinator of Quality Assurance/Risk Management of the Hospital and the individual responsible for receiving bids. Miss Horan testified that Dave Potthoff, the LBB vice president responsible for the Hospital's account, explained to her that a rule change made by the St. Paul Insurance Company allowed a restructuring which resulted in substantial cost savings. When Mr. Potthoff asked Miss Horan why LBB's bid was not accepted, she said that the Hospital's board of directors decided to switch brokers for reasons unknown to her.

Miss Horan also testified that she had discussed LBB's reduction with a hospital administrator from another hospital at a hospital association meeting. At trial, Miss Horan could not recall this person's identity. Nevertheless, this hospital administrator told her that "they have had that type of coverage structuring several years prior." Thus, Miss Horan suspected that LBB may have overcharged the Hospital in

---

1. *St. Louis-Little Rock Hospitals, Inc., d/b/a Compton Heights Medical Center v. Lawton-* *Byrne-Bruner Insurance Agency Company,* No. 822–05759.

prior years for insurance coverage. Based on Miss Horan's knowledge, the Hospital contemplated filing suit against LBB. This was despite the fact that Miss Horan did not know whether the Hospital's coverage was the same as the other hospital to which she was comparing premiums.

Later, the Hospital directed Miss Horan to write the Missouri Division of Insurance about the possible premium overcharges. On April 2, 1982, Miss Horan sent a letter to the Division setting forth her concern that the Hospital had been overcharged and inquiring about the possibility of recourse. On April 20, 1982, the Division of Insurance forwarded a copy of the Hospital's letter to LBB and requested LBB to respond.

Thereafter, Robert Robson, LBB Vice President for Market Development, and Mr. Potthoff investigated the complaints in Miss Horan's letter. On May 13, 1982, Mr. Robson sent the Division LBB's response with his conclusion that the Hospital's complaint was without merit. On May 28, 1982, the Division of Insurance wrote the Hospital and forwarded LBB's response. In its letter, the Division stated the following:

Please find enclosed a copy of a reply we received from Lawton, Byrne, & Bruner in answer to your complaint.

I neither agree nor disagree with the statements by R.A. Robson of Lawton, Byrne & Bruner but, based upon the information given us, we are unable to pursue the matter. Every consumer/insured has the right to evaluate their programs and to shop around in the insurance market. Mr. Robson has indicated that the program available to you through St. Paul only became available as of July, 1981.

You must keep in mind that market fluctuations also have a bearing on the premium companies charge. In our inflationary times, we have found the trend is to decrease premiums which might be the case here.

The Division of Insurance is not permitted by statute to make determinations in this type of case. Our function is to make sure that the companies are not acting arbitrarily.

However, your position may be correct and if you feel that you wish to pursue the matter, I can only recommend that you continue through a private legal counsel.

The Division of Insurance did not forward a copy of this letter to LBB. However, Mr. Robson testified that after he had sent LBB's response letter of May 13, 1982, he received a telephone call from the Division of Insurance in which he was advised that LBB's response seemed satisfactory and that there was nothing further for LBB to do.

Following the above-described exchange of letters, there was no further communication between LBB, the Hospital, and the Division of Insurance concerning the matters raised in Miss Horan's letter of April 2, 1982. Although Mr. Potthoff continued to have discussions with Miss Horan during this period concerning the insurance the Hospital continued to carry through LBB, at no time did Miss Horan or anyone else from the Hospital inform LBB about the Hospital's consultation with a lawyer or its contemplation of litigation.

On September 1, 1982, Illinois Union ceased to provide errors and omissions coverage for LBB which was thereafter covered by insurance provided by Fremont.

On September 20, 1982, the Hospital filed its cause of action against LBB. On September 22, 1982, David Anderson, LBB's Senior Vice President, heard a rumor that the Hospital was suing LBB. Because of this rumor, Mr. Anderson sent to Fremont, LBB's then errors and omissions carrier, copies of Miss Horan's letter to the Division of Insurance and LBB's response. On October 6, 1982, Fremont formally declined coverage and suggested that LBB notify Illinois Union, LBB's prior carrier. Illinois Union was so notified and on November 10, 1982, it also formally declined coverage. Prior to this event, Fremont agreed to defend LBB in the Hospital's action although

under a full and complete reservation of rights.

This declaratory judgment action followed. Fremont sought a declaration that its policy provided no coverage for LBB for the suit filed against it by the Hospital. LBB then filed a third party action against Illinois Union contending, in the event Fremont prevailed, Illinois Union's policy provided coverage. On September 7, 1984, the trial court ruled in favor of LBB and Fremont. In its findings of fact and conclusions of law, the trial court found (1) that the Hospital's April 2, 1982 letter was a claim within the meaning of Illinois Union's policy during its coverage period; (2) that Illinois Union suffered no prejudice as a result of any late notice it received of the Hospital's claim; and (3) that Fremont's policy was not applicable in the present case.

This appeal by Illinois Union follows. Illinois Union contends the trial court erred in its determination that Illinois Union's policy provided LBB coverage in the action brought by the Hospital. LBB also appeals the trial court's determination on the contingency that we reverse the trial court's judgment against Illinois Union.

■ We first address Illinois Union's appeal. In this declaratory judgment action, we will sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Abco Tank and Manufacturing Company v. Federal Insurance Company,* 550 S.W.2d 193, 197 (Mo. banc 1977). The dispositive question presented is whether the trial court's conclusion of law that Miss Horan's April 2, 1982 letter to the Missouri Division of Insurance constituted a "claim" as defined in Illinois Union's insurance policy is correct. We hold it was not.

We quote Miss Horan's letter in its entirety:

Dear Sir,

I have included a brief synopsis of events which pertain to the insurance provided us by our broker, Lawton-Byrne-Bruner. Should this situation fall within your jurisdiction, I would appreciate your intervention.

We have used the insurance brokerage service of Lawton-Byrne-Bruner for over ten (10) years and relied upon their professional recommendations to provide us with the best coverage at the least cost. This year we obtained bids from five (5) sources including Lawton-Byrne-Bruner. Their quote for Property, Comprehensive, Umbrella, and Worker's Compensation coverage was approximately $65,000 less this year than last. The magnitude of the savings led me to pursue the coverage further. I have since found out that these savings were available to us for at least three (3) years prior.

What our agent told me was that St. Paul Insurance Company had changed their regulations this year allowing Lawton-Byrne-Bruner to offer the same coverage at one-half price. The bid from Lawton-Byrne-Bruner was through the same company as in the previous years. In fact, I know of at least four (4) hospitals who have had this policy restructuring from two to four years, implying these savings were available to us for this time period.

Because I feel that it is the responsibility of the broker to provide us with adequate coverage in a cost efficient manner, I *suggest* that these responsibilities were not fulfilled.

I would appreciate your investigation into this to determine *if we have any recourse.* (Emphasis added).

In Illinois Union's insurance agreement with LBB, the policy under which the trial court determined that Miss Horan's letter constituted a claim, the word "claim" is defined in the following manner:

B. "Claim" means:

   1. The assertion of a legal right through a demand for money or services;

   2. The service of suit or institution of arbitration proceedings.

Our review of the language just quoted in Illinois Union's policy is guided by the rule that the interpretation of unambiguous terms of an insurance policy is a question of law, and, as such, we are not required to defer to the findings of the trial court. *Hrebec v. Aetna Life Insurance Company*, 603 S.W.2d 666, 671 (Mo.App. 1980). We need only afford plain and unambiguous language its plain meaning. Only in cases where the policy language is subject to different interpretation must we construe the language in manner most favorable to the insured. *McNeal v. Manchester Insurance & Indemnity Company*, 540 S.W.2d 113, 120 (Mo.App.1976). In addition, where a term is defined in the policy, we look there and nowhere else for its definition unless the definition itself is not clear and unambiguous. *Hrebec*, 603 S.W.2d at 671.

In the present case, the language in Illinois Union's policy provides a plain and unambiguous definition of the term "claim." Accordingly, we need not construe the policy's language in a manner most favorable to the insured. Illinois Union's insurance agreement with LBB establishes a two-part definition for the term "claim" with each part patently explained. Under Illinois Union's policy, a "claim" can only be: (1) the assertion of a legal right through a demand for money or services or (2) the service of suit or the institution of arbitration proceedings.

Affording the definition of a "claim," as provided in Illinois Union's policy, the plain meaning it deserves, we are unable to reach the conclusion that Miss Horan's letter constitutes a claim. Her letter fails as a claim on several counts. First, the Hospital made no direct demand on LBB in the letter. Its lawsuit was filed after Illinois Union's errors and omissions coverage for LBB had expired and after LBB considered the Division of Insurance's inquiry closed. Second, our reading of Miss Horan's letter reveals that at the time the letter was sent, the Hospital was in no position to make a demand on or to institute a suit against LBB. The Hospital was merely inquiring whether its belief that LBB had failed to obtain for the Hospital the lowest premiums available had any merit. Third, the Hospital's request that the Division of Insurance investigate and determine whether the Hospital had any recourse against LBB precludes the conclusion that it was asserting a legal right through a demand for money or services. The Hospital's inquiry into its potential recourse was not an assertion of rights, only the ascertainment of the possibility of a future assertion of legal rights.

Moreover, the trial court's reliance on *Katz Drug Company v. Commercial Standard Insurance Company*, 647 S.W.2d 831 (Mo.App.1983), is misplaced in the present case. *Katz* certainly does not stand for the proposition that a letter of inquiry rises to the level of a claim against an insured. In *Katz*, the trial court determined that the insured was not covered by its errors and omissions carrier because the lawsuit against the insured was not filed during the policy period. Although the policy provided for both the filing of a claim or a suit as the prerequisite for coverage, the trial court equated a claim with a lawsuit and held, absent the filing of a lawsuit, that no claim was made. On appeal, our colleagues in the Western District reversed and held that the word "claim," as used in the policy, included both a demand for some asserted right or an actual lawsuit. *Id.* at 835.

Unlike the disputed meaning of "claim" in *Katz*, Illinois Union's definition of "claim" was plain and unambiguous. The definition expressly provided for either the assertion of a legal right through a demand or the service of a suit. In *Katz*, the record was replete with demands made upon the insured during the term of the policy. *Id.* at 836. In the instant case, however the Hospital never made a demand upon LBB. Its letter was not a claim but a letter of inquiry to the Division of Insurance. Therefore, an error of law occurred when the trial court interpreted the word "claim," as defined in Illinois Union's policy, to include the Hospital's letter to the Division of Insurance. Since no de-

mand was made upon LBB by the Hospital during the life of Illinois Union's policy and the Hospital's lawsuit was filed after LBB's policy with Illinois Union had expired, we reverse the trial court's determination that Illinois Union's policy affords LBB coverage for the suit brought by the Hospital.

Since we reverse the trial court's judgment against Illinois Union, we must address cross-appellant LBB's appeal.

In its appeal, LBB contests the trial court's determination that Fremont's policy was not applicable to the Hospital's claim against LBB. We agree.

Once again our review in this declaratory judgment action is guided by the tenets set down in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), as quoted in *Abco Tank and Manufacturing Company.* We will affirm the trial court's judgment unless there is no substantial evidence, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. 550 S.W.2d at 197. In the present case, the trial court made no findings or conclusions in support of its determination in favor of Fremont. Therefore, we will presume all facts to be found in accord with the judgment and we will uphold the judgment under any reasonable theory presented and supported by the evidence. *Lohrmann v. Carter,* 657 S.W.2d 372, 376 (Mo.App.1983).

■ In the present case before the trial court, Fremont presented two theories in support of its declaratory judgment action. First, Fremont argued that Paragraph III. B.) 1.) of its policy precludes coverage for LBB in the lawsuit brought by the Hospital. Second, Fremont contends the Hospital's claim against LBB is for premiums or return premiums which are specifically excluded from coverage under the "Exclusions" section of its policy.

Paragraph III. of Fremont's insurance agreement with LBB provides the following:

III. TERRITORY AND CLAIMS–MADE PROVISIONS:

This Policy applies to acts, errors, omissions or personal injuries which occur anywhere in the world provided that claim is made and suit is brought against the Insured in the United States of America, its territories or possessions or Canada:

A) during the policy period and then only if claim is first made during the Policy period, or

B) prior to the effective date of the Policy, provided that:

1) no insured had knowledge of any circumstance which might result in a claim at the effective date of the first Policy issued to the Insured and continuously renewed thereafter; and

These claims-made provisions of Fremont's policy permit coverage for claims arising prior to the policy's effective date and during the policy period. Paragraph III. A.) plainly and unambiguously states that a claim must be first made during the policy period. Paragraph III. B.) 1.) provides that if a claim arose from errors and omissions committed prior to the policy period, the insured must not have knowledge of circumstances which might result in a claim at the effective date of Fremont's first policy issued to the insured.

In the present case, the Hospital filed its suit against LBB during Fremont's policy period. We have already determined that prior to its lawsuit, the Hospital never made a demand upon LBB and that its letter, written by Miss Horan on April 2, 1982, was only a letter of inquiry to the Division of Insurance. Therefore, the fundamental question before us is whether the Hospital's letter and LBB's subsequent communication with the Hospital and the Division of Insurance constituted sufficient notice to LBB from which it could have reasonably foreseen that the Hospital would make a claim.

Our careful review of the whole record reveals that there was no substantial evidence to support a finding that LBB possessed knowledge of any circumstances which might result in a claim at the effective date of Fremont's policy. In August,

1982, when LBB applied for errors and omissions coverage from Fremont, LBB considered the matters raised in the Hospital's April 2, 1982 letter to the Division of Insurance to be closed. Prior to late September, 1982, when the Hospital's suit was filed, LBB had heard nothing further from the Hospital or the Division of Insurance since May, 1982, a period of almost five months.

Previously, LBB had received a copy of the Hospital's letter to the Division of Insurance. Thereafter, LBB responded to the Division with what it considered to be a full and complete response with the conclusion that the Hospital's complaint was without merit. In addition, Mr. Robson, the author of LBB's response, received a phone call from the Division of Insurance which told him that LBB's response was sufficient and that LBB need do nothing more in the matter. Moreover, LBB continued to have discussions with Miss Horan and at no time, did she inform LBB that its response to its letter to the Division of Insurance was unsatisfactory or that the Hospital had consulted a lawyer in contemplation of litigation. Indeed, throughout this period, LBB continued to be the Hospital's broker for its Little Rock facility.

In the present case, LBB never had a reasonable basis to suspect that the Hospital might bring a claim. None of the above-described events suggest that at the time LBB contracted with Fremont it reasonably possessed knowledge of any circumstances which might result in a claim. All the facts before LBB indicated that the matters raised in the Hospital's letter to the Division of Insurance were resolved. A contrary holding under the particular facts of this case would permit Fremont to escape coverage in a situation where LBB had no knowledge to anticipate that the Hospital might raise a claim. Certainly, "knowledge of any circumstance which might result in a claim," as stated in Paragraph III. B.) 1.) of Fremont's policy, must mean knowledge more reasonably substantial and certain than LBB's knowledge in the present case which was limited to an understanding that it had successfully responded to the Hospital's letter of inquiry to the Division of Insurance and that the matter was fully resolved.

■ We next consider Fremont's remaining theory before the trial court. Fremont contends that the "Exclusions" section of its policy agreement with LBB, which specifically excludes "any claim for premiums, return premiums, commissions or claim or tax monies," precludes coverage for LBB because the Hospital's claim was for premiums or return premiums. We disagree.

Disposition of this question is dependent on the construction of Fremont's exclusionary clause. In cases involving such clauses, we construe the terms most strongly against the insurer and to the favor of the insured because such clauses endeavor to restrict coverage. *Citizens Insurance Company of New Jersey v. Kansas City Commercial Cartage, Inc.*, 611 S.W.2d 302, 307 (Mo.App.1980). In Fremont's insurance agreement with LBB, Fremont did not define the meaning of a claim for premiums or return premiums. Our independent research reveals that an action for premiums or return premiums by an insured against an insurer is one for money had and received to recover back premiums paid where there was no effective contract or the contract was repudiated by the insurer. 20 Applemann, Insurance Law and Practice § 11276 at 111 (Rev.1980).

In the present case, the Hospital's action against LBB was not one for premiums or return premiums. It was one for actual damages and punitive damages. This is evident from the Hospital's petition which was set out in four counts: (1) breach of contract, (2) negligence, (3) breach of duty to deal in good faith, and (4) misrepresentation. These theories all relate to the Hospital's contention that LBB failed to perform its duty to provide the Hospital with adequate coverage in a cost efficient manner on the best possible terms. Nowhere in its petition does the Hospital dispute whether it received the insurance benefits and coverage for which it paid nor does it seek all

or part of the premiums it paid to be refunded.

Therefore, under the facts and law of this case, we reverse the trial court's determination that Fremont's policy is not applicable to the Hospital's claim against LBB. Such a holding violates the rule in *Murphy v. Carron.* Neither Fremont's contention that Paragraph III. B.) 1.) of its policy precludes coverage nor its contention that the "Exclusions" section of its policy eliminates coverage is supported by substantial evidence or the law.

We reverse the judgment of the trial court in all respects. We direct the trial court to enter judgment in favor of Illinois Union against respondent LBB. We further direct the trial court to enter judgment in favor of cross-appellant LBB against cross-respondent Fremont.

CRANDALL, P.J., and KELLY, J., concur.