**UTICA MUTUAL INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**Dianne IMPALLARIA, d/b/a Charles River Insurance Agency, et al., Defendants, Appellees.**

No. 89–1123.

United States Court of Appeals, First Circuit.

Heard Aug. 2, 1989.

Decided Dec. 29, 1989.

Darrell Mook with whom William H. Clancy, John J. McGivney and Burns & Levinson, Boston, Mass., were on brief, for plaintiff, appellant.

Robert M. Buchanan with whom Cynthia M. Clarke and Sullivan & Worcester, Boston, Mass., were on brief, for defendant, appellee Allstate Ins. Co.

Carol A. Griffin with whom Paul W. Goodrich, James J. Moran, Jr., Mark P. Bailey and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for defendants, appellees Rollins Burdick Hunter of Mass., Inc., Robert F. Danahy and R. John Manninen.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and GARRITY,* Senior District Judge.

GARRITY, Senior District Judge.

This case concerns the extent of coverage of a professional errors and omissions insurance policy issued by Utica Mutual Insurance Company (Utica) to Dianne Impallaria d/b/a Charles River Insurance Agency, who is a defendant in a separate pending action brought against her and three others [1] by Allstate Insurance Company (Allstate). In that case Allstate alleges an abundance of errors and omissions incident to its agent Impallaria's agreeing to insure for the 1986 school year the fleet of 553 school buses used by the school department of the City of Boston to transport students assigned to schools beyond walking distance from their homes. Jurisdiction in both cases rests upon diversity of citizenship. At Impallaria's request Utica undertook her defense subject to a reservation of rights based upon the policy's exclusions from coverage. A year later, Utica acted on its reservation by bringing this action for declaratory relief seeking a declaration that exclusion 2(d) was applicable to Allstate's claims against Impallaria. All parties to the underlying action were joined as defendants and, there being no genuine issue as to any material fact, they filed cross-motions for summary judgment. The district court ruled that exclusion 2(d) did not apply [2] and entered judgment for the defendants. We affirm.

## I. *Errors and Omissions Policy*

The policy in question is entitled Insurance Agents' and Brokers' Errors and

---

* Of the District of Massachusetts, sitting by designation.

1. The other defendants are Rollins Burdick Hunter of Massachusetts, Inc. (RBH), Robert F. Danahy, RBH's president, and R. John Manninen, RBH's vice-president.

2. Exclusion 2(f) for punitive damages was held to be applicable to Allstate's claim in Count XIV for multiple damages pursuant to Mass.G.L. c. 93A; but is not involved in this appeal.

Omissions Policy. Its Insuring Agreements include the following pertinent provisions:

1. Insuring Clause: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages by reason of liability arising out of any negligent act, error or omission, whenever or wherever committed, or alleged to have been committed by the insured or any person employed by the insured in conduct of the named insured's business....

2. Exclusions: This insurance shall not apply with respect to any claim:

(a) brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of the insured ...;

(b) for bodily injury to ...;

(c) arising from liability of others assumed or contracted for by the named insured;

(d) for premiums, return premiums, commissions or claim or tax monies;

(e) arising out of the certification or acknowledgement by the insured in his capacity as a notary ...;

(f) for punitive or exemplary damages, fines or penalties ...;

(g) arising from professional services rendered, or which should have been rendered, prior to the effective date hereof....

Whether the policy requires Utica to defend and pay[3] on Impallaria's behalf or whether exclusion 2(d) governs depends on the terms of the policy and the nature of the claim asserted by Allstate against Impallaria in the underlying action. Is it "any claim ... for premiums"? The answer lies in the contents of Allstate's complaint and in the regulations and rules governing the automobile liability industry in Massachusetts in 1985.

## II. *Commonwealth Automobile Reinsurers*

In Massachusetts, automobile insurance is regulated comprehensively by state statutes, here Mass.G.L. c. 175, § 113H, entitled "Assigned risk plans"; Division of Insurance regulations, here 211 C.M.R. §§ 7.01–.08, entitled "Plan of Operation of the Massachusetts Motor Vehicle Reinsurance Facility"; and Rules of Operation adopted in accordance with the aforesaid Plan of Operation by the Reinsurance Facility therein established, which is called "Commonwealth Automobile Reinsurers" or, popularly, C.A.R. (CAR).[4] As alleged in the complaint in the underlying suit, all companies licensed to sell motor vehicle liability insurance in Massachusetts are required to be members of CAR and to abide by CAR's rules of operations.[5] Approximately twenty to twenty-five member companies, including at all relevant times Allstate, are designated as "servicing carriers." Servicing carriers write and service all policies written through CAR.

For every policy that a servicing carrier writes within CAR, the servicing carrier is required to pay or "cede" to CAR an amount equal to the premium due on that policy as calculated according to approved rate filings and CAR's Rules of Operation. This requirement appears in the following portion of the regulations:

*87.03: Surcharged Reinsurance*

Massachusetts law provides that certain high risk drivers may be insured at rates other than those charged in the normal markets for motor vehicle insurance.... Policies ceded in this manner shall be described as subject to surcharged reinsurance.

The premium charged by a member company on policies which are reinsured under 211 CMR 87.03 shall be calculated according to the rates filed for high risk drivers on behalf of the

---

**3.** The policy also provided for a limit of $300,000 on the insurer's liability and for a deductible from the amount of each claim payable under the policy of $1,000.

**4.** Prior history of automobile insurance rate regulation in Massachusetts is set forth in *Ameri-*

*can Manufacturers Mutual Ins. Co. v. Commissioner of Insurance,* 374 Mass. 181, 372 N.E.2d 520 (1978).

**5.** All references to CAR rules in this opinion refer to those in effect during 1985.

Facility and which have become effective in accordance with Massachusetts law. An amount equal to that premium shall be paid by the company to the Facility as a reinsurance charge.

According to paragraph 11 of Allstate's complaint, not denied by Impallaria: CAR Rule 7 requires that policies covering fleets of five or more vehicles be rated according to the insured's loss experience; CAR also requires member companies to cooperate in providing the statistical data necessary to perform experience rating; and the premium developed by experience rating is charged in addition to a manual-based premium.

The effect of these and other provisions of the regulations and rules is to enable the owners of all motor vehicles registered in Massachusetts to obtain insurance coverage made mandatory by related statutes, at rates fixed by a state-sponsored agency, and to shift the risk of loss on policies covering high risk drivers and fleets of vehicles from the insurer writing a policy to a reinsurance pool created by payments from all insurance companies doing business in Massachusetts.

CAR has established, pursuant to 211 C.M.R. § 87.05, a system of "designated brokers"—sometimes called "representative producers"—who are assigned by lottery to sell motor vehicle liability insurance on behalf of servicing carriers in particular communities within Massachusetts. Servicing carriers are required to accept all qualified policies written by their designated brokers. Defendant Impallaria was a designated broker for Allstate from July 1982 to September 30, 1986.

### III. *The Underlying Action*

The errors and omissions charged against Impallaria by Allstate are alleged in Counts X through XIV of the complaint in the underlying action and are entitled, respectively, for breach of contract, for indemnification, for misrepresentation, for negligence and under Mass.G.L. c. 93A.

They all allege involvement by Impallaria in RBH's selling to the Boston School Committee at a meeting on June 14, 1985 an Allstate motor vehicle insurance policy insuring Boston's school buses for the next school year at a "guaranteed fixed cost" premium as distinguished from a premium subject to experience rating. The facts alleged are as follows: in April, 1985, the school committee solicited automobile insurance bids for its fleet of school buses. Manninen, vice president of RBH and a co-defendant in the underlying action, asked Impallaria through one of her employees if she would be interested in obtaining a quote from Allstate for the school committee bus business, in effect becoming a co-broker. Manninen knew that Impallaria was a designated broker for Allstate.[6] RBH was not. Impallaria was interested and obtained a preliminary "manual" quote from Allstate in the sum of $478,655, which she transmitted to RBH for inclusion in the bid to the school committee. She knew that the insurance, if written by Allstate, would be reinsured with CAR and that the manual quote provided her was subject to experience rating. On June 11, RBH submitted a bid to the committee, purportedly on behalf of Allstate, quoting a premium of $492,733, having added a $14,078 service fee to the initial quote received from Impallaria.

Bids were opened at a school committee meeting on June 14 attended by Manninen and Danahy, who insisted that theirs was a fixed cost bid, that the policy would not be written through CAR and that it would not be subject to experience rating. Impallaria was not at this meeting and, according to her answer to the complaint in the underlying case, had no direct dealings with the school committee or its representatives. Upon request of a school committee representative, Manninen wrote on the RBH bid, over his initials, "guaranteed fixed cost—subject only to change in the number of vehicles." Unsurprisingly, the only other bid being for a premium of $2,200,000,

---

**6.** Allstate sells automobile insurance in Massachusetts directly through its own employees; it does not sell in Massachusetts through independent agents or brokers, except as it is required to sell through CAR designated brokers.

RBH won the job. On June 26, Allstate sent Impallaria a formal proposal on the school buses listing a manual quote which stated that the rates and premiums quoted were estimates only and that the final premium could vary depending on receipt of additional rating information. On June 28 Impallaria transmitted the formal proposal to RBH. At a meeting on July 3, RBH told Impallaria that they had guaranteed their bid to the school committee as a fixed cost. She responded that the premium was not fixed because the policy was subject to experience rating. But neither RBH nor Impallaria so advised the school committee at or about that time.

### IV. *Allstate's Loss and Claims*

Based on information from prior insurers and from CAR, Allstate generated an experience rating modification, i.e., an additional premium, of $586,066 for a total of $1,063,497. On November 13 it issued an endorsement to the school committee for an additional premium reflecting the experience rating modification and reported the experience rating to CAR, as required by CAR's rules. On December 9, the school committee refused to pay the additional on the ground that the $492,733 it agreed to pay had been guaranteed as a fixed cost. On December 30, Impallaria told Allstate for the first time that RBH had guaranteed the manual quote premium. On January 27, 1986 Allstate issued a notice of cancellation of the school committee policy for non-payment of the additional premium to be effective on February 21, 1986. The school committee appealed the cancellation to the Massachusetts Board of Appeal on Motor Vehicle Liability Policies and Bonds (the "Board of Appeal"), which disallowed the cancellation. The Board of Appeal's decision was upheld on review by the Boston Municipal Court. Following the Board of Appeal's disallowance of the cancellation, on August 19, 1986, Allstate also requested that CAR reimburse Allstate for the uncollectible experience modification of $586,066, a request denied by CAR's Governing Committee on September 24, 1986.

As required by CAR's rules, Allstate ceded, i.e., paid, $1,063,497 to CAR, but collected for itself only $477,431 from the school committee.[7] In the underlying action Allstate seeks recovery from RBH, Danahy, Manninen and Impallaria of the difference, viz. $586,066, together with punitive damages under Mass.G.L. c. 93A, § 11 and costs and attorneys' fees.

In the first nine counts of the underlying complaint, Allstate claims against RBH, Danahy and Manninen. In the four counts against Impallaria, Allstate alleges, *inter alia*, that it entered into a contract (the Agreement) with Impallaria on July 12, 1982 when she became a designated broker for Allstate and that she breached it in various respects; that the Agreement provides that Impallaria will indemnify Allstate for all damages caused by her wrongful acts and that her unauthorized appointment of RBH as co-broker on the school committee buses policy was such a wrongful act; that her failure to notify the school committee that its policy covering school buses was subject to experience rating constituted a misrepresentation intended to induce the school committee to award the insurance contract to RBH, a result she knew would likely injure Allstate; that she was negligent in binding Allstate to provide automobile insurance to the school committee at a fixed cost; and that her actions were an unfair and deceptive trade practice and a wilful and knowing violation of the Massachusetts statute.

### V. *"Any Claim for Premiums"*

When sued by Allstate in the instant proceeding, Impallaria invoked her errors and omissions policy. Utica disputed coverage on the basis of exclusion 2(d), arguing that, however labeled and phrased in the underlying case, Allstate's claims against her are all essentially "for premiums."

This appeal would be decided on the basis of what appears to be the plain language of the policy were it not for the fact that plain language is essentially alien to

7. Presumably RBH's service fee was paid by Allstate rather than directly by the school committee—what actually occurred does not appear in the record.

insurance policies. In this area of the law we find a powerful predilection for ambiguity and hidden meanings. "Premium" is a word in everyday usage. It means "the consideration paid in money or otherwise for a contract of insurance," *Webster's Third New International Dictionary;* or "the sum paid or agreed to be paid by an assured to the underwriter as the consideration for the insurance," *Black's Law Dictionary, 4th Ed.,* or "the agreed price for assuming and carrying the risk," 42 Am. Jur.2d, *Insurance* § 826; or "a sum paid by an insured to some entity insuring one against a loss of a particular kind," Appleman, *Insurance Law and Practice* § 7831. In this case the "consideration" or "price" or "sum" agreed upon and actually paid for the insurance in question was $492,733. Under the decisions of three tribunals, the Board of Appeal, the Boston Municipal Court and CAR, that sum was full consideration for the policy issued by Allstate and the school committee owes nothing more for that policy. Thus, whatever may be the claims made with respect to that policy and the circumstances of its issuance, they are not for a premium in the ordinary meaning of the word.

Nonetheless, undaunted by dictionaries, Utica has constructed a novel application of exclusion 2(d) based upon Allstate's use of the term "additional premium" in the "Background" section [8] of its complaint in the underlying action in describing its unsuccessful efforts to collect an additional $586,066 from the school committee or obtain a refund in that amount from CAR. To the best of our understanding, Utica's argument goes like this: Allstate should be bound by its characterization and estopped from denying that it was an additional premium that it was required to pay to CAR; Allstate lost that premium when CAR's refusal to return it was upheld by the Boston Municipal Court; this loss was caused by Impallaria; hence the suit against her is "any claim—for premiums," with emphasis on the word "any." Furthermore, appellant urges, exclusion 2(d),

when read in context, is unambiguously directed to the type of loss sustained by Allstate.

There are several difficulties with this argument. First, Allstate's use of the term was imprecise. The correct description of the amount not collected from the school committee would have been "the *potential* additional premium" or "the premium that would have been payable but for the fixed cost guarantee." In the same "Background" section of its complaint, Allstate accurately characterized the sum as "the uncollectible experience modification of $586,066." Second, any bar akin to estoppel flowing from Allstate's statements should not affect Impallaria's rights under an Insurance Agents' and Brokers' Errors and Omissions Policy. After all, she did not use the phrase "additional premium" on which appellate places such heavy reliance; nor does it appear in her answer filed in the underlying action. Third, unlike other exclusions in section 2 of the policy, exclusion 2(d) is not prefaced with words such as "brought about or contributed to by" or "arising from." Had the drafters intended to exclude losses attributable to *potential* premiums or *claimed* premiums such as here involved, the exclusion could readily have been defined more broadly.

The fatal flaw in Utica's position is that it conflicts with the Division of Insurance regulation governing surcharged reinsurance. Regulation 211 C.M.R. § 87.03, differentiates between the "premium charged by a member company" and the "reinsurance charge" due CAR. This latter sum is described not as a premium but rather as an *"amount equal to that premium"* (emphasis added). Indeed the regulation phrase accurately describes the aim of Allstate's suit against Impallaria, viz., recovery of damages equal to the premium that should have been charged and collected from the school committee but, arguably, through no fault of its own, was not.

---

**8.** The term does not appear elsewhere; in particular not in any of Allstate's requests for re-

covery.

Utica also argues that the identity of the amount of Allstate's out-of-pocket loss alleged in its complaint and the premium it would have collected from the school committee but for RBH's guarantee proves that Allstate's is the type of loss covered by exclusion 2(d), i.e., a premium. In our opinion, that is a classic non-sequitur exposed by attendant circumstances. First, the entire policy is written in terms of "claims," not "losses." The insuring agreements pertaining to limits of liability, deductible amounts, the company's duty to defend and the insured's duty to cooperate and consent to settle, as well as the exclusions clause here at issue, all speak of claims against the insured, not losses suffered from the standpoint of the third party claimant. Second, Utica's contention turns on an inherent ambiguity in exclusion 2(d) and runs up against the settled principles that ambiguities in insurance contracts are to be resolved against the insurer and exclusions from insurance coverage are to be strictly construed. Third, Allstate's suit against Impallaria is not limited to its out-of-pocket loss as alleged in the complaint; but rather requests "damages in the amount of at least $586,066, trebled pursuant to Mass.G.L. c. 93A, § 11[9] ... costs and attorneys fees." Finally, Allstate's loss attributable to the defendants in the underlying action may prove to be less than the amount it has claimed, without, however, affecting the nature of its loss. For example, it is not at all certain that the outcome of the underlying lawsuit will, apart from the issues of punitive damages, costs and attorneys' fees, award Allstate all or nothing of its $586,066 claim. Impallaria's answer pleads the affirmative defense of contributory negligence, asserting that Allstate's negligence with respect to the school bus policy fiasco was greater than her own. Assuming that Allstate prevails, its own negligence could reduce or defeat its claim. *Fernandes v. Union*

*Bookbinding,* 400 Mass. 27, 507 N.E.2d 728 (1987) (the Massachusetts comparative negligence statute, Mass.G.L. c. 231, § 85, applies to claims sounding in negligence). Moreover, CAR Rule of Operations 17(A)(2) provides that under certain circumstances a servicing carrier such as Allstate shall be reimbursed for expenses specified percentages [10] "of written premium." Thus it may develop at the trial in the underlying action that Allstate's out-of-pocket loss was different than its out-of-pocket claim.

## VI. *The Fremont and Evanston Cases*

There is a dearth of judicial precedent construing the exclusionary clause at issue in this case; but two such cases have been found and cited by the parties, both declaratory judgment actions seeking interpretations of insurance brokers' errors and omissions policies. The first, *Fremont Indemnity Co. v. Lawton–Byrne–Bruner Insurance Agency Co.,* 701 S.W.2d 737 (Mo.App. 1985), was discussed extensively in their briefs. The other, *Evanston Insurance Co. v. Fred Tucker Insurance,* 872 F.2d 278 (9th Cir.1989), was called to our attention after oral argument, with a copy of the opinion enclosed with a brief covering letter. Neither case is directly on point because the underlying actions in both are by insureds against independent insurance brokers, whereas the underlying action here is by an insurer against its agent. Nevertheless, the language of the exclusionary clauses construed in those cases is identical to that here at issue and the courts' decisions are consistent with our analysis *ante* and with the judgment ordered by the district court.

In *Fremont,* plaintiff in the underlying action was St. Louis–Little Rock Hospitals, Inc. ("The Hospital"), which operated separate hospitals in the two cities. The defendant insurance broker ("LBB") had placed its insurance for over 30 years. One year the cost of renewal was $65,000 less than

---

**9.** While a separate exclusion, 2(f), applies to punitive or exemplary damages, their inclusion in Allstate's suit seems inconsistent with Utica's contention that Allstate's claims are equivalent to its losses. The measure of punitive damages is no less the claimant's loss than the conduct

and circumstances of the wrongdoer. *Valcourt v. Hyland,* 503 F.Supp. 630, 639 (D.Mass.1980).

**10.** The 1989 Rules of Operation provide for percentages totalling 33%. The percentages during the relevant period here may of course differ.

the previous year's premium and LBB, on inquiry by the Hospital, explained that the premium reduction was due to a rule change by the insurance company which resulted in substantial cost savings. What LBB did not disclose, and perhaps did not know, is that the rule change had gone into effect several years previously and the Hospital had been paying premiums that were substantially greater than necessary. When the Hospital learned the truth and sued, LBB claimed coverage under its errors and omissions policy with Fremont Indemnity Company, which then filed for declaratory relief. In pertinent part, the court ruled as follows:

> Fremont contends that the "Exclusions" section of its policy agreement with LBB, which specifically excludes "any claim for premiums, return premiums, commissions or claim or tax monies," precludes coverage for LBB because the Hospital's claim was for premiums or return premiums. We disagree.

> \*    \*    \*    \*    \*    \*

> In the present case, the Hospital's action against LBB was not one for premiums or return premiums. It was one for actual damages and punitive damages. This is evident from the Hospital's petition which was set out in four counts: (1) breach of contract, (2) negligence, (3) breach of duty to deal in good faith, and (4) misrepresentation. These theories all relate to the Hospital's contention that LBB failed to perform its duty to provide the Hospital with adequate coverage in a cost efficient manner on the best possible terms. Nowhere in its petition does the Hospital dispute whether it received the insurance benefits and coverage for which it paid nor does it seek all or part of the premiums it paid to be refunded. *Id.* at 743.

The court held that the exclusion section was inapplicable and that LBB was covered under the errors and omissions policy issued by Fremont.

The opposite result was reached in the *Evanston* case, in which plaintiffs in the underlying action owned two fishing vessels for which they sought marine insurance from their local insurance broker, Fred A. Tucker and Co. ("FATCO"). They paid FATCO a premium of approximately $75,000 but failed to obtain the coverage. Plaintiffs brought a state action for the amount of their premium and for damages under Washington's Consumer Protection Act. When FATCO claimed coverage under a professional errors and omissions policy with Evanston Insurance Company, the insurer instituted the federal declaratory judgment action, citing policy provision 1(f) excluding "any claim for ... premiums." In a per curiam opinion, the court denied coverage and held that the exclusion governed, stating at p. 279:

> Hansen and Hjelle contend that the exclusion applies to claims for premiums owed as legitimate business debts, rather than to claims for negligence where the measure of damages happens to be the amount of premiums paid. We disagree.

> A court will not modify clear and unambiguous language under the guise of construing a policy.

The difference in the results in the *Fremont* and *Evanston* cases seems clearly attributable to the nature of the claims asserted in the underlying litigation. In the former, they were for "actual damages" caused by LBB's failing to provide the Hospital with cost efficient coverage; in the latter, for recovery of a $75,000 premium paid to FATCO and for damages under the state Consumer Protection Act. The *Evanston* case is inapposite to the instant litigation and judgment for the defendant Impallaria is supported by the *Fremont* case *a fortiori*, since the defendant there, LBB, was afforded coverage despite having received substantial premiums for several years from the underlying plaintiff Hospital, whereas the defendant here never received premiums from any source.[11] In our opinion, both cases support the ordinary definition of "premium" and the construction of the controlling exclusionary

---

**11.** It may be that Impallaria received a share of the service fee of $14,078 included by RBH in the bid it guaranteed to the school committee.

But there is nothing in the record to support this speculation and Allstate's complaint does not allege any division of the service fee.

clause that we have adopted in the instant case.

The other cases relied on by Utica are readily distinguishable. *Barron v. Scaife*, 535 So.2d 830 (La.App.1988) concerned a policy exclusion for claims "arising from or relating to ... insolvency." In *Shelly v. Moir*, 138 Wis.2d 218, 405 N.W.2d 737 (App.1987), the policy exclusion applied to claims "based upon or arising out of bodily injury." The policy in *Barnstable County Mutual Fire Insurance v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978), excluded claims "arising out of ownership ... of ... any recreational vehicle." The language of these exclusions, which permitted the courts to find them applicable to a variety of claims, is far broader than the Utica policy exclusion which is specifically limited to "any claim ... for premium."

## VII. *Conclusion*

Utica's reliance on certain out-of-context allegations in Allstate's complaint in the underlying action is simplistic, at best. Even if we focus on the type of loss alleged instead of the alleged wrongful conduct of Impallaria, as Utica urges us to do, we fail to find that exclusion 2(d) applies to Allstate's claims against her. Therefore, Impallaria is due the protection of her professional errors and omissions policy and the district court's grant of summary judgment is, in all respects, affirmed.