**K.L. PATTISON and Pattison, Stanger & Company, Plaintiffs–Appellees,**

v.

**EMPLOYERS REINSURANCE CORP., Defendant–Appellant.**

**No. 89–1517.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 17, 1990.

Decided April 20, 1990.

James W. Heckman, Daniel S. Saylor, Nancy J. Bourget (argued), Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for plaintiffs-appellees.

John R. Monnich, Mary Jo Diegel (argued), J. Michael Malloy, Holahan, Malloy, Maybaugh & Monnich, Troy, Mich., for defendant-appellant.

Before NELSON and BOGGS, Circuit Judges, and BERTELSMAN,\* District Judge.

BERTELSMAN, District Judge.

The proper resolution of this appeal from the grant of summary judgment for the insured in this action on an errors and omissions policy presents little difficulty once the facts are understood. We hold that the trial court, per Judge Duggan,

---

\* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

correctly held that an obligation to defend the underlying action against the insureds existed under the ambiguous provisions of the policy.

## FACTS

The facts are not in dispute and need not be stated at length. The plaintiff-appellee K.L. Pattison is an insurance broker. One Evans was a sub-agent of Pattison who had an independent contractor relationship with Pattison and operated a separate office.[1] Evans issued certain binders to customers he had obtained and collected substantial premiums. Certain insurance companies issued policies at the direction of Evans. Evans, however, absconded with the premiums which were never received by the companies or by Pattison.

The insurance companies cancelled the policies because they did not receive the premiums. The insureds under the cancelled policies filed an action, referred to in the record as the "underlying action," against the insurance companies, Evans, Pattison and various others. The action sought to recover damages equal to the amounts paid as premiums since the underlying plaintiffs now had no insurance. The actual funds collected as premiums were long gone with Evans.

The primary theories advanced in the complaint in the underlying action were that Pattison had "constructively received" the premiums paid to Evans and that Pattison had negligently supervised Evans, its agent.

Pattison called on defendant-appellant Employers Reinsurance Corp., its errors and omissions carrier, to defend it in the underlying action. Employers declined, citing the "return of premiums" exclusion in its policy. The applicable policy provisions are:

## "SECTION I

"COVERAGE. The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker, and including activities as an insurance consultant or notary public, as respects claims first made against the Insured during the policy period.

\*      \*      \*      \*      \*      \*

## "SECTION III(a)

"With respect to such insurance as is afforded by this policy, the Corporation shall pay . . . all expenses incurred in the defense of any claim or suit against the Insured. . . .

\*      \*      \*      \*      \*      \*

## "SECTION VI

"EXCLUSIONS. This policy does not apply to:

\*      \*      \*      \*      \*      \*

"(f) Claims or commissions, taxes, or the failure to collect, pay or return premiums."

Pattison filed this declaratory judgment action in the trial court to resolve the coverage issues. Meanwhile, the underlying action also proceeded. The underlying ac-

---

1. Although the briefs submitted by the parties in this matter do not specifically state that Evans was an independent contractor, this status is implicit from the record. For example, plaintiff's motion for summary judgment characterized the "underlying action" as an action in negligence against Pattison for its failure to supervise an alleged agent who received the premium and failed to return the unearned portion of those premiums. If Evans were a common law employee or partner, Pattison would have been liable for his actions under the doctrine of *respondeat superior* and there would have been no issue regarding a duty to supervise. Also, if Evans were a common law employee or partner of Pattison, the issue of constructive receipt would not exist, because the funds would have been *received* by Pattison. The underlying complaint contained an alternative allegation that Evans was a "principal" of Pattison, but the above considerations rebut that allegation.

tion was settled. Upon the filing of an amended complaint in the underlying action omitting any reference to return of premiums, Employers agreed to defend Pattison, but under a reservation of rights. Pattison does not seek reimbursement from Employers for defense costs incurred subsequent to the filing of the amended complaint in the underlying action. The issue remained, however, as to coverage for defense costs accruing prior to the filing of the amended complaint.

This issue was submitted to the trial court on cross-motions for summary judgment. The trial court held that the original complaint in the underlying action arguably stated a claim for negligence that was independent of any claim for a return of premiums. The trial court also based its decision, in part, on the maxim that any ambiguities in the language of a policy are to be construed against the insurer. The trial court emphasized that Pattison had never received the premiums, which, as the reader will recall, were presumably supporting Evans in living a life of leisure in parts unknown.

No claim is made on this appeal that there is any issue of fact, material or otherwise, so the court is not confronted with the problems sometimes arising concerning lurking issues of fact in connection with summary judgments. *Cf. Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

The parties are also in agreement as to the applicable principles of Michigan insurance law, although not how they apply.

### Michigan Insurance Law

■ Michigan case law provides that an insurer must defend its insured when the allegations contained in the underlying complaint arguably come within the policy coverage. *Reurink Brothers Star Silo, Inc. v. Maryland Casualty Company*, 131 Mich.App. 139, 345 N.W.2d 659 (1983); *Meridian Mutual Insurance Company v. Hunt*, 168 Mich.App. 672, 425 N.W.2d 111 (1988). The duty to defend is not limited by the precise language in the underlying complaint. The insurer has the duty to look beyond the allegations in the complaint to determine whether coverage is possible. That is, if there are any theories of recovery that fall within the policy, the insurer owes a duty to defend the suit. The insurer's duty to defend depends upon the potential shown in the complaint that the facts ultimately proved fall within the coverage. *Jonesville Products, Inc. v. Transamerica Insurance Group*, 156 Mich.App. 508, 513, 402 N.W.2d 46, 48 (1986); *Reurink*, 131 Mich.App. at 143, 345 N.W.2d at 661.

An insurer has a duty to defend, despite theories of liability asserted against the insured which are not covered under the policy, if there are any theories of recovery that come within the policy coverage. *Detroit Edison Company v. Michigan Mutual Insurance Company*, 102 Mich.App. 136, 141–142, 301 N.W.2d 832, 835 (1980). Doubt as to whether the policy is applicable must be resolved in the insured's favor. *Meridian*, 168 Mich.App. at 677, 425 N.W.2d at 114.

### Cases Involving Similar Exclusion Clauses

■ Employers argues that there is no ambiguity and that the exclusion applies to any action where the recovery sought is measured by premiums paid by the plaintiff, as was the situation in the underlying action.

In *Evanston Ins. Co. v. Fred A. Tucker & Co., Inc.*, 872 F.2d 278 (9th Cir.1989), the court held that the exclusion applied where an insured paid a premium to a broker but an intermediary broker failed to obtain the coverage. The court rejected the argument of the broker "that the exclusion applie[d] to claims for premiums owed as legitimate business debts, rather than to claims for negligence where the measure of damages happens to be the amount of premiums paid." 872 F.2d at 279.

Although the language quoted from *Evanston* is broad enough to cover the facts of the instant case, we think it important to note that in *Evanston* the premiums had actually been received by the broker,

whereas here they had not. That in our view is the pivotal distinction.

This distinction was pointed up by the analysis of the court in *Fremont Indemnity Co. v. Lawton–Byrne–Bruner Ins. Agency Co.*, 701 S.W.2d 737 (Mo.App.1985). There, a customer of the insured broker sued it for damages, measured by premiums paid, for negligence in failing to obtain the most economical insurance for the customer. A similar exclusion was proffered as a defense by the broker's errors and omissions carrier. The court observed:

> "In Fremont's insurance agreement with LBB, Fremont did not define the meaning of a claim for premiums or return premiums. Our independent research reveals that an action for premiums or return premiums by an insured against an insurer *is one for money had and received* to recover back premiums paid where there was no effective contract or the contract was repudiated by the insurer. 20 Applemann, Insurance Law and Practice § 11276 at 111 (Rev.1980)."

*Fremont*, 701 S.W.2d at 743 (emphasis added).

Black's Law Dictionary defines an action for "money had and received" as follows:

> "**Money had and received.** In common law pleading, the technical designation of a form of declaration in *assumpsit*, wherein the plaintiff declares that the defendant *had and received* certain money, etc.
>
> "Gist of action for 'money had and received' is that defendant *has received* money which, in equity and good conscience, should have been paid to plaintiff and under such circumstances that he ought to pay it over."

Black's Law Dictionary 907 (5th ed. 1979).

Under this analysis, the applicability of the exclusion in the instant case is at least unclear, since Pattison had never actually *received* the premiums.

In *Utica Mutual Insurance Co. v. Impallaria*, 892 F.2d 1107 (1st Cir.1989), a somewhat different fact pattern was presented, but the analysis was similar. There, an insurance company sued its agent for improperly binding it to inadequate premiums in the issuance of a school bus liability policy. The agent's errors and omissions carrier refused to defend the action relying on the action for premiums exclusion. The court held that although the amount of the premium might be relevant to damages, the action was not one for recovery of a premium in the usual sense. The court held that "[h]ad the drafters [of the exclusion] intended to exclude losses attributable to potential premiums or claimed premiums such as here involved, the exclusion could readily have been defined more broadly." *Id.*

So here. Had the drafters of the policy intended to exclude actions based on negligence rather than contract or moneys constructively rather than actually received, it could readily have done so. Also indicating that strict construction of this exclusion is appropriate is *Otteman v. Interstate Fire & Cas. Co.*, 172 Neb. 574, 111 N.W.2d 97, 89 A.L.R.2d 1182 (1961) (action against agent for failure to arrange for collection of premium and issuance of policy not within exclusion).

We agree with District Judge Duggan's analysis when, after alluding to the principles of Michigan insurance law that all ambiguities must be construed in favor of the insured and that the duty to defend is broader than the duty to pay, he said:

> "Applying these principles to the present case, this Court concludes that plaintiffs were entitled to a defense by defendant. While the essence of the complaint in the underlying action is a claim for return of premiums, nevertheless, there *appears* to be a claim in the underlying lawsuit that these plaintiffs are liable because of, among other things 'a negligent breach of duty' (original complaint, 24(d)). The underlying complaint also charges these plaintiffs with vicarious liability for the 'negligent' acts of 'the agents of such Defendants taken in the scope and course of his duties and within the apparent authority of said agent, and as such Defendants are responsible to the plaintiff for the return of such unearned premiums entrusted to the agent and constructively received by

such defendants.' (Paragraph 25 of original complaint). Such allegations, while inartfully drafted, **appear to assert liability against these plaintiffs on a theory independent of these plaintiffs having actually received the premiums.** In fact, these plaintiffs have always asserted that they never received the premiums. The underlying complaint asserts, against these plaintiffs, liability for the loss suffered by the underlying plaintiffs as a result of the present plaintiffs' negligent conduct. To prevail in such a theory, the plaintiffs in the underlying action would have to prove that the plaintiffs in this action were responsible for the premiums, actually received by someone else, and that negligence on the part of these plaintiffs or their agents, was a proximate cause of the loss.

\* \* \* \* \* \*

"Defendant acknowledges in exhibit A attached to its motion for summary judgment (a copy of which is attached to this opinion) that it was on notice, as early as April 23, 1986, that there was a potential claim against these plaintiffs for 'negligent supervision'. The actual complaint, which was filed on July 28, 1986, further asserted claims of negligence. While such claims may have lacked merit, they at least, arguably, come within the policy coverage. As long as *any* theory of recovery asserted comes within the policy coverage, the insurer has the duty to defend. *Detroit Edison v. Michigan, Mutual, supra.*"

R.13, pp. 4–6 (emphasis original) (emphasis in boldface added).

AFFIRMED.