JOHNSTON *v.* MILLER.

1. ANIMALS—SHEEP—CONSTRUCTION OF CONTRACT.

In construing a contract as to letting of sheep, the language used by the parties must be given its ordinary significance, as far as possible.

2. SAME—SHEEP—SECOND CONTRACT—INTENT.

The circumstances surrounding the making of a second agreement as to letting of sheep and the purpose to be accomplished thereby are entitled to consideration in arriving at the actual intent of the parties.

3. SAME—SHEEP—CONTRACTS.

In construing a contract as to letting of sheep, it must be assumed that the parties meant what they said, and in the absence of any claim to the contrary, that they understood the nature of the obligations assumed by each as expressed therein.

4. CONTRACTS—CONSTRUCTION.

The various provisions of a written contract as executed must be construed together and force and effect given to each.

5. SAME—CONSTRUCTION—INTENT.

The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and where a contract has several stipulations, the intention of the con-

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts, § 236.
[2] 12 Am Jur, Contracts, §§ 242, 247.
[3] 12 Am Jur, Contracts, §§ 227, 231.
[4–6, 9] 12 Am Jur, Contracts, § 241.
[7] 12 Am Jur, Contracts, § 249.
[8, 12] 6 Am Jur, Bailments, §§ 208, 209.
[10–12] 2 Am Jur, Animals, §§ 19, 21; 6 Am Jur, Bailments, §§ 82, 171, 172.
[12] 12 Am Jur, Contracts, § 362.
[13] 3 Am Jur, Appeal and Error, § 823.
[14] 3 Am Jur, Appeal and Error, § 776.

tracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part.

6. SAME—CONSTRUCTION—EMASCULATION OF A CLAUSE.
   A construction that will completely emasculate a clause of a contract will not be adopted, if any other reasonable construction is admissible.

7. ANIMALS—SHEEP—CONSTRUCTION OF CONTRACT BY PARTIES.
   Where 1941 contract stated plaintiff let to defendant "64 sheep, on terms 3 years to double" and, notwithstanding at the expiration of such contract there were less than 20 sheep left of the original flock, the parties entered into another written contract wherein it was stated plaintiff, who did not turn over any more sheep, let "128 sheep, on terms 3 years to double," although defendant did not then purchase more sheep, he became obligated to turn over 256 sheep at end of second contract of age and sex specified in the contracts even though it was necessary for him to include sheep not in the original flock, the second contract being subject to the same interpretation as the original undertaking which had been given a construction by the parties themselves.

8. SAME—CONTRACTS—PERFORMANCE—EVIDENCE.
   Where at end of first 3-year contract by plaintiff to let 64 sheep to defendant "on terms 3 years to double" defendant had less than 20 of such sheep but then signed a second 3-year contract reciting that plaintiff let 128 sheep to defendant but was otherwise the same as to age and sex of animals to be returned to plaintiff, there was no legal objection to prevent defendant binding himself to procure other sheep for plaintiff and nothing to show he could not have done so, the contract was not impossible of performance because of matters transpiring after its execution.

9. CONTRACTS—CONSTRUCTION OF DOUBTFUL PORTIONS.
   Such portions of the instrument as are of a doubtful character, or may admit of a double construction, should be conformed to those portions of the contract that are clear and explicit; and in connection with this rule such construction should be given as will best give a meaning to the whole terms of the contract, if that can be done.

10. BAILMENT—ADDITIONAL CONTRACT OBLIGATIONS.
    The fact that a bailee has exercised the degree of care imposed on him by law is immaterial where the issue concerns some ad-

ditional obligation to which he has subjected himself by his contract, for no degree of care or vigilance, short of complete performance, will relieve him of such obligation.

11. Same—Contracts—Statutes—Public Policy.

Parties are permitted to make their own contracts in reference to their mutual rights and liabilities under bailments of property but are not permitted to contract in contravention of positive law or public policy.

12. Animals — Bailment — Common Law — Contracts—Performance.

Under written contract whereby plaintiff let to defendant "128 sheep, on terms 3 years to double," the defendant assumed, in addition to the common-law incident of the bailment, an obligation to return a specified number of animals at the expiration of the contract which could not be discharged except by performance, notwithstanding performance may be more onerous than anticipated and that no negligence was attributable to defendant in his care for them.

13. Appeal and Error—Questions Reviewable—Estoppel.

Where it is determined that plaintiff-appellant was entitled to performance under contract as to letting of sheep to defendant whereby latter was required to deliver to plaintiff at expiration of 3-year term double the number received from plaintiff, it is unnecessary to discuss the claim of estoppel advanced in plaintiff's behalf.

14. Same—Questions Reviewable—Statement of Reasons and Grounds for Appeal—Waiver.

Questions raised in appellant's statement of reasons and grounds for appeal but not argued in his brief, are regarded as waived and consideration not deemed required.

Appeal from Missaukee; Campbell (Howard L.), J. Submitted October 7, 1949. (Docket No. 45, Calendar No. 44,551.) Decided January 9, 1950.

Action by Nelson Johnston against E. E. Miller for damages caused by failure to deliver sheep due under written contract. Verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Frank H. Miltner,* for plaintiff.

*Jack W. Korn,* for defendant.

CARR, J.   This case involves the interpretation of a contract between plaintiff and defendant.   In the fall of 1941, plaintiff inserted an advertisement in a newspaper stating in effect that he had sheep "to put out."   Following negotiations concerning the matter, the parties entered into the following written agreement, which appears as exhibit B to the reply filed in the case:

"October 17, 1941
"On this day and date I, Nelson Johnston let to E. E. Miller (64) Sixty-four sheep, on terms ·(3) years to double.   And to be returned in yews [ewes] (3) three years old or not more than (5) five years old.   The Bucks are to be furnished by the holder (E. E. Miller).

E. E. MILLER                         NELSON JOHNSTON
Signature of holder          Signature of owner"

In accordance with the agreement plaintiff turned over to defendant 64 sheep.   Defendant accepted the flock and proceeded to handle it.   The venture did not work out profitably.   At the end of the contract term less than 20 sheep survived.   No claim is made, however, that the sheep died because of defendant's failure to properly care for them.   Neither is there any claim that the sheep were not in good condition at the time they were turned over by the plaintiff.

Instead of adjusting their respective rights and liabilities under the contract at its expiration, the parties entered into a new agreement, in writing, in form identical with the instrument above quoted, except as to date and number of sheep.   It is agreed that it was actually signed subsequently to October 17, 1944, although such date appears on it.   It pro-

vided for the letting of 128 sheep, and the signatures of the parties were witnessed. As before noted, defendant at the time had less than 20 sheep of the original flock. He did not purchase others in order to raise the flock to the number stated in the later agreement, nor did plaintiff turn over more sheep to him.

On October 17, 1947, when the second contract expired, defendant had in his possession 5 sheep of the original number turned over to him by the plaintiff 6 years before, and no increase from the flock. Plaintiff claimed that under the contract he was entitled to 256 sheep of the kind set forth in the contract, that is, ewes between 3 and 5 years of age. On refusal of defendant to deliver such number of sheep the instant suit was started, plaintiff seeking recovery based on the contract dated October 17, 1944, for the fair market value of 256 sheep as of the end of the specified term. It was his claim, as set forth in the declaration, that defendant had breached the contract by not turning over the sheep. Defendant's answer denied liability.

At the conclusion of the proofs on the trial in circuit court plaintiff moved for a directed verdict in his behalf, leaving to the jury merely the question as to the amount of recovery. Said motion was based primarily on the claim that defendant, under the provisions of the contract, assumed the obligation to turn over to plaintiff, at the expiration of the term stated, twice the number of sheep specified in the agreement as let to him, such sheep to be of the age and sex specified, and that such failure resulted in liability for the fair market value of the sheep. It was further claimed that by entering into the contract on which the suit was based the parties had placed a definite construction on the first agreement, and impliedly on the second, and that defendant was estopped to insist on a different construction.

The motion was denied. The trial court submitted the case to the jury and a verdict in favor of the defendant was returned. In his charge the trial judge stated in substance that the transaction between the parties amounted to a bailment, and that:

"Mr. Miller was not the insurer of that property. He took them under this agreement, and he was to return a certain number of sheep. Of course if the sheep weren't there and he couldn't raise the ewes, he couldn't return them. The contract does not provide for anything else except the return of the property at the end of 3 years. You will remember what I said about the matter of bailment."

The principal question at issue on appeal is whether defendant, under the terms of the contract on which plaintiff's alleged cause of action is based, obligated himself to deliver to plaintiff, on the expiration of the term stated in the contract, 256 ewes between 3 and 5 years of age. In construing the writing we must give to the language used by the parties its ordinary significance, as far as possible. The circumstances surrounding the making of the agreement and the purpose to be accomplished thereby are entitled to consideration in arriving at the actual intent of the parties. It must be assumed that the parties meant what they said, and, in the absence of any claim to the contrary, that they understood the nature of the obligations assumed by each as expressed in the writing. The various provisions of the undertaking as executed must be construed together and force and effect given to each. Basic rules to be applied in arriving at a correct interpretation have been repeatedly recognized and declared by this Court. *Gee* v. *Olson,* 320 Mich 274; *Moulton* v. *Lobdell-Emery Manufacturing Company,* 322 Mich 307; *Laevin* v. *St. Vincent de Paul Society of Grand Rapids,* 323 Mich 607 (6 ALR2d 815).

In *Prowant* v. *Sealy,* 77 Okla 244 (187 P 235), it was said:

"The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part." (Syllabus by the court.)

"We are not authorized to presume that the parties to the contract employed the words uselessly, but must presume that they were used designedly and for some purpose; otherwise they would not have been incorporated in the agreement. * * * The rule that effect should be given, if possible, to all parts of a contract is generally applied by all the courts, and we cannot reject this part of the contract if the words will admit of any reasonable and practicable construction that will sustain them as an essential part of the agreement. As stated in *State, ex rel. Davis,* v. *Mortensen* (69 Neb 376, 95 NW 831, 5 Ann Cas 291), *supra,* a construction that will completely emasculate a clause of a contract will not be adopted, if any other reasonable construction is admissible."

The agreement in question here is abbreviated and lacks desirable certainty and particularity. Certain of its terms indicate that the parties considered that ownership of the property remained in the plaintiff, that the transaction amounted to a bailment, and that the sheep specified as turned over to defendant by plaintiff were to be returned. Plaintiff is designated as "owner" and defendant as "holder." No reference is made to an increase in the flock except as it is implied in the words "to double." Unquestionably the parties had in mind that the flock would increase under the care of the defendant.

The provision with reference to the delivery of sheep to the plaintiff, at the expiration of the term, is specific as to the age and sex thereof, indicating that the parties intended that defendant should deliver to plaintiff at the end of the 3-year period twice the number of sheep received.

In the original contract executed in 1941 it may be assumed that the parties had in mind that ewes in the original flock that were between the designated ages might be returned to plaintiff at the end of the period. It is obvious, however, that no sheep from the increase of the flock could be so delivered because none would be 3 years old at the time. Presumably the parties recognized such fact when they executed the agreement, and in consequence had in contemplation that in order for defendant to turn over to plaintiff on the 17th of October, 1944, 128 ewes between 3 and 5 years of age it would be necessary for him to procure at least a part of the animals other than from the flock, notwithstanding any increase therein. In view of the situation existing and the express terms of the writing, we cannot read into this contract a provision to the effect that plaintiff was not entitled to the delivery of sheep not included in the original flock or in the increase thereof.

The agreement on which the instant suit was based is subject to the same interpretation as is the original undertaking. Evidently the parties did not wish to adjust their respective rights, and obligations in October, 1944, and therefore entered into the contract for a further term of 3 years. Such contract specified the number of sheep that plaintiff claims he was entitled to, under the first agreement, as being "let" to defendant. There is some dispute in the testimony of the parties with reference to the preparation and execution of the second contract. Plaintiff as a witness in his own behalf stated in substance that he consulted defendant with ref-

erence to the terms of the new agreement, and that defendant expressly told him to insert the figure "128" therein. Defendant denied any such conversation and claimed that the draft of the contract was forwarded to him by mail for his signature. He conceded, however, that at the time he signed the instrument he knew its terms.

Under the circumstances there is much force in the argument of counsel for plaintiff that the parties, by the execution of the second agreement, placed a definite construction on the first contract, and that the undertaking directly involved in this action should be construed accordingly. It is insisted on behalf of plaintiff that when defendant executed the second agreement he, in effect, conceded that he had, or should have, in his possession 128 sheep (ewes between 3 and 5 years of age) to the delivery of which plaintiff would have been entitled in the absence of a contract for the further term. It is the theory of the defendant that the relationship between the parties was that of bailor and bailee, that in carrying out the agreement he was subject merely to the common-law incidents pertaining to an ordinary mutual benefit bailment, that he assumed no additional obligation, and that in the absence of improper treatment of the sheep on his part, or negligence in caring therefor, he was not liable other than for the return of the sheep (3 in number at the time of the trial) from the original flock still remaining in his possession. In his answer he made offer of such return.

We think that the contract must be construed as binding defendant to turn over to the plaintiff, at the expiration of the term of the contract, twice the number of sheep specified as received by him, and that such sheep must necessarily have been procured by defendant from sources other than the flock. For the reason above suggested, defendant, in 1944,

could not have delivered to plaintiff the number and kind of sheep specified out of the original flock or its increase. It is equally apparent that in carrying out the agreement of 1944 no sheep from the flock could have been so delivered. Had defendant started the new 3-year term with 128 ewes 3 to 5 years of age, such animals would have been past 5 years of age at the time of the termination of the period, while any increase in the flock would have been below the age of 3 years. There was of course no legal objection to prevent defendant binding himself to procure other sheep for plaintiff, and there is nothing in this record to indicate that he could not have done so. The contract was not, in other words, impossible of performance because of matters transpiring after its execution. The case of *Shear* v. *Wright,* 60 Mich 159, cited by counsel for defendant, is not in point.

In support of his position plaintiff cites *In re Estate of Alexander P. More,* 121 Cal 609 (54 P 97), and *Smalley* v. *Corliss,* 37 Vt 486. In the California case an agreement was made between the parties to a lease of certain land whereby the livestock thereon should be turned over to the lessee who was to have "all the increase of the stock, flocks, and herds on said island, and the proceeds thereof, during the term of this lease, upon the express understanding and condition, however, and it is hereby expressly agreed by the parties hereto, that the cattle on said island shall be increased and kept up to 1,500 head, and that the flock of sheep shall be grown up to 40,000 head of sheep, and that the said lessee shall, at the end of said term, turn over and deliver to said lessor, or his assigns, that number, to-wit, 40,000 head of sheep in good quality and condition, and that the said lessor shall have the fall clip of wool of the year 1894." The flock of sheep was not increased to the number specified and at the termination of the agreement fell short by 14,000 head. The lessee

contended that he was obligated to make the increase only if he could do so by the exercise of reasonable care and husbandry, and that there was no liability on his part in the absence of a showing that he had failed to properly care for the flock. The court rejected such claim, pointing out that under the specific terms of the contract the lessee had assumed a definite obligation to be performed by him at the end of the term, and that he was accordingly liable for the value of the number of sheep not delivered to the lessor. Under a somewhat similar agreement it was held in the Vermont case cited that the lessee was bound to deliver to the lessor the property he had received, or its equivalent in value, even though the loss or depreciation was wholly without his fault.

In *Bellows* v. *Denison,* 9 NH 293, the facts involved were analogous to those in the case at bar. Under an express agreement a flock of sheep was delivered by the plaintiff to one Gilbert B. Mann, said agreement providing that Mann was "to keep well 1 year, and return them in good order, all to be of good age; and give and deliver to said Bellows 126 pounds of good washed wool, as good as the flock shall average, to be delivered in the month of June next; said sheep to be as good as those taken at this time, and the same weight of sheep." Defendant was a constable who had seized the sheep on a writ of attachment. In discussing the nature of the contract between plaintiff and Mann, it was said:

"Such portions of the instrument as are of a doubtful character, or may admit of a double construction, should be conformed to those portions of the contract that are clear and explicit; and in connection with this rule such construction should be given as will best give a meaning to the whole terms of the contract, if that can be done. In addition to this, if the question be doubtful, as the property was originally the plaintiff's, it must be holden to remain

so, until shown, by a balance of testimony at least, to have been alienated by him.  *  *  *

"The design of the contract seems to have been to provide for the return of the same sheep, as far as might be; and in case of any loss or accident, that the bailee should make up this loss by other sheep equal in condition, age, and weight. By such understanding of the contract all parts of it can be reconciled. It places the risk of loss of the sheep upon the bailee; and this would tend to insure greater diligence, and care in the charge of the flock, which would be a desirable object to effect; and the bailee might perhaps well afford to incur this risk, as it would seem, from the terms of the contract, that the increase of the flock was to belong to him.

"Such we conceive to be the most natural construction of the contract. On this principle the sheep actually taken should be returned, with such others in weight, and of equal quality as would, in case of loss, make the amount taken."

See, also, *Peck* v. *Brewer,* 48 Ill 54; *Martinez* v. *Garcia,* 43 Ariz 243 (30 P2d 501); *Allen* v. *Whiting,* 58 Ariz 273 (119 P2d 240).

In *Smith* v. *McGill,* 27 Mich 142, plaintiff let to defendant a yoke of oxen under an agreement that bound defendant to return the animals at the expiration of the term specified in as good condition as they were when received by defendant, and to pay plaintiff any damage the animals might sustain while in defendant's possession. It was held this imposed an absolute liability on defendant and that he was, by virtue of such provision of the contract, liable for injuries occurring to the oxen while in his possession.

In 6 Am Jur, p 310, in discussing the relationship of bailor and bailee, it is said:

"The fact that a bailee has exercised the degree of care imposed on him by law is immaterial where the issue concerns some additional obligation to

which he has subjected himself by his contract, for no degree of care or vigilance, short of complete performance, will relieve him of such an obligation."

In *Grady v. Schweinler,* 16 ND 452 (113 NW 1031, 14 LRA NS 1089, 125 Am St Rep 674, 15 Ann Cas 161), plaintiff brought suit on a contract by virtue of which he had delivered a horse to defendant for certain purposes. The animal died after his delivery to defendant, without fault or negligence on defendant's part. On the trial the court directed a verdict for defendant, and plaintiff appealed. The testimony in the case indicated that defendant had promised that he would return the animal in as good condition as when he took it or, if anything happened, he would pay for it. In reversing the case and granting a new trial, the court said:

"The appellant's contention is that the relative rights of the plaintiff and defendant, as bailor and bailee, must be determined from the contract of bailment, and not by the general rules of liability under the law of bailments. We have no doubt of the correctness of this contention. Parties are permitted to make their own contracts in reference to their mutual rights and liabilities under bailments of property as well as in reference to other subjects, but, of course, are not permitted to contract in contravention of positive law or public policy, and perhaps may not in all cases relieve themselves from the results of their own negligence. In this case the language was positive and unequivocal that the bailee was to pay for the horse if he was unable to return him for any reason. If anything happened to the horse, making a return impossible, payment was to be made. This language permits of no exceptions, but implies an unconditional liability if the horse could not be returned. It does not permit of the meaning that the horse was to be paid for only in case of its loss through the bailee's fault or negligence. It creates the bailee an insurer of the re-

turn of the horse when the purposes of the bailment had been accomplished and a return demanded. The authorities firmly indorse this principle."

Among other cases recognizing the principle in question are: *Steele* v. *Buck,* 61 Ill 343 (14 Am Rep 60); *Drake* v. *White,* 117 Mass 10; *Smith* v. *Niles,* 20 Vt 315 (49 Am Dec 782); *Manti City Savings Bank* v. *Peterson,* 30 Utah 475 (86 P 414, 116 Am St Rep 862). See, also, annotations in 32 ALR 859 *et seq.,* and 150 ALR 269 *et seq.*

Defendant cites in support of his position *In re Parsell's Estate,* 184 Mich 522 (Ann Cas 1917A 1160). There the statute of limitations was pleaded by defendant. The agreement, the interpretation of which was involved in the case, was as follows:

> "Almer, October 18, 1898

> "This is to certify that G. F. Parsell has this day taken of M. V. Edgar 12 ewe sheep to keep for the rental annually of one-half the wool and increase from said 12 sheep, for the term of 3 years from and after this date.

> "G. F. PARSELL."

It was held by the Court that said agreement created the relationship of bailor and bailee, and that the statute of limitations had not run against the claim. It was pointed out that the expiration of the term of the contract did not end the bailment for the reason that if the bailee did not redeliver the property or excuse his failure to do so, or deny the bailor's right to possession of it, he continued to hold it in trust, subject to the right of the bailor to take the property or to consider the relationship as continued or renewed. It will be noted that the arrangement in the case contemplated the return of the sheep bailed, together with one-half the wool and one-half the increase. There was no undertaking on the part of the bailee to double the flock or to re-

turn to the bailor any specified number of animals. He did not assume any obligation, in addition to the common-law incidents of such a contract, of the character involved in the case at bar.

For the reasons above stated, we think that the trial court was in error in overruling the motion made in plaintiff's behalf at the conclusion of the proofs. Under the contract defendant assumed a specific obligation from which he could not be discharged except by performance. The fact that such obligation proved to be more onerous to him than anticipated is no defense. If the venture had proved successful, he doubtless would have realized substantial profit. The fact that there was a decrease in the size of the flock rather than an increase was an unfortunate circumstance, but performance by defendant of his undertaking was not rendered impossible. No claim is made that he could not have carried out his agreement with the plaintiff by purchasing the sheep that he had bound himself to deliver.

The conclusion reached on the main issue in the case renders it unnecessary to discuss the claim of estoppel advanced in plaintiff's behalf. Other questions raised in plaintiff's statement of reasons and grounds for appeal, but not argued in his brief, may be regarded as waived. In consequence consideration thereof is not required. *Parks* v. *Railway Co.*, 315 Mich 38. The case is remanded to the trial court with instructions to set aside the judgment entered and to grant a new trial. Plaintiff may have costs.

Boyles, C. J., and Reid, North, Dethmers, Butzel, Bushnell, and Sharpe, JJ., concurred.