AETNA CASUALTY & SURETY
CO., Plaintiff,

v.

DOW CHEMICAL CO., Defendant.

No. 93–73601.

United States District Court,
E.D. Michigan,
Southern Division.

July 3, 1996.

Charles W. Browning, Detroit, MI.

Michael Foradas, Chicago, IL.

Gregory E. Smith, Dow Chemical Company, Litigation Department, Midland, MI.

Charles Bergen, Chicago, IL.

Ronald Rice, Southfield, MI.

Karen Flax, Chicago, IL.

Mark J. Seplak, Chicago, IL.

Bruce N. Moss, Troy, MI.

Marsha K. Ross, Chicago, IL.

Michelle K. Enright, Minneapolis, MN.

James Case, Detroit, MI.

Charles C. Cheatham, West Bloomfield, MI.

Louis G. Adolfsen, New York, NY.

Anita Fox, Washington, DC.

Michael E. Thoits, Bloomfield, MI.

Vicky Kaiser Russell, Chicago, IL.

John F. Milan, Troy, MI.

Stanley Prokop, Detroit, MI.

Laura A. Sanom, Morristown, NJ.

Dale Thornsjo, Minneapolis, MN.

Gary Eller, Detroit, MI.

Joseph A. Hinkhouse, Chicago, IL.

Linda M. Orlans, Troy, MI.

Michael A. Pope, Chicago, IL.

Robert E. Graziani, Detroit, MI.

Peter Kupelian, Southfield, MI.

Robert J. Bates, Jr., Chicago, IL.

Susan Duncan, New York, NY.

Deborah Molitz, Southfield, MI.

H. Fred Northcraft, Kansas City, MO.

Jack O. Kalmink, Detroit, MI.

Bruce N. Moss, Troy, MI.

**OPINION AND ORDER GRANTING AETNA CASUALTY & SURETY COMPANY AND INSURANCE COMPANY OF NORTH AMERICA'S MOTIONS FOR SUMMARY JUDGMENT; GRANTING PLANET INSURANCE COMPANY'S MOTION FOR LEAVE TO APPLY MOTION FOR SUMMARY JUDGMENT TO FIREMAN'S FUND'S CROSS CLAIMS; AND GRANTING FIREMAN'S FUND'S MOTION TO FILE THIRD PARTY COMPLAINT AND AMENDED CROSS CLAIMS**

EDMUNDS, District Judge.

This matter came before the court upon three motions: 1) Aetna Casualty & Surety Company and Insurance Company of North America's motion for summary judgment;[1] 2) Planet Insurance Company's motion for leave to apply motion for summary judgment to Fireman's Fund's[2] cross claims; and 3) Fireman's Fund's motion to file third party complaint and amended cross claims. For the reasons stated below, the court hereby grants the motions.

### I. Facts

Dow Chemical Company and Dow Corning, Inc. (collectively, "Dow") have been the target of environmental contamination claims in approximately 350 locations across the United States and in Canada. Aetna Casualty & Surety Company ("Aetna") is one of Dow's insurers. Aetna filed this declaratory action against Dow, requesting that the court determine the rights and liabilities of the parties under Dow's insurance policy for coverage for such environmental claims. Aetna also named as parties to this suit numerous other insurance companies who issued policies to Dow, including Planet Insurance Company[3] and Insurance Company of North America ("INA").

---

1. While the parties and the court refer to Aetna and INA's motions as "motions for summary judgment," the motions in fact are motions for partial summary judgment on only certain Aetna and INA policies. Other insurance policies remain at issue in this case.

2. Defendants Fireman's Fund Insurance Company and its subsidiaries, Associated Indemnity Corporation and The American Insurance Company are collectively referred to as "Fireman's Fund."

3. Planet Insurance Company is now known as Reliance National Indemnity Company.

Aetna and INA have moved for summary judgment,[4] contending that Dow's claims under their policies are not covered because the policies all contain an absolute pollution exclusion. Aetna issued two primary policies to Dow.[5] The policies contain pollution exclusion clauses that state as follows:

> It is agreed that the policy does not apply to the following:
>
> 1. To *bodily injury or property damage* arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by pollutants.
>
> 2. Any loss, cost or expense arising out of any governmental direction or request imposed upon the insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or for the preparation of any plan relating to any of the foregoing activities.
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Aetna's exhibits A and B, endorsements 33 and 27 respectively. The policies define "bodily injury" and "property damage" as follows:

> "bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.
>
> "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Aetna's exhibits A and B, definitions section.

INA issued four policies to Dow.[6] The INA policies contain language identical to the Aetna policies quoted above.[7] Aetna and INA contend that the pollution exclusion clause bars Dow from recovering under the policies.

## II. Standard for Summary Judgment

 Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled

---

**4.** Aetna and INA joined in a motion for summary judgment filed by Planet Insurance Company; they also briefed the issues themselves. Subsequently, Planet and Dow settled and Dow dismissed its claims against Planet. Thus, the Planet motion for summary judgment against Dow is moot. In addition, certain London Insurers originally also joined in Planet's motion for summary judgment. These insurers withdrew their joinder by court order on May 16, 1996.

**5.** The Aetna policies are policy number 65–AL–320025–SRA effective 4/1/85 to 4/1/86 and policy number 65–AL–320034–SRA effective 4/1/86 to 4/1/87.

**6.** The INA policies are 1) policy number CFG–G06634734/BCF–771597 effective 4/1/87 to 4/1/87; 2) policy number CFG–G06637565/BCF–771651 effective 4/1/88 to 4/1/89; 3) policy number PLO–G06638569/BCF771698 effective 4/1/89 to 4/1/90; and 4) policy number PLO–G06640473/BCF771747 effective 4/1/90 to 12/1/90 (canceled).

**7.** The definitions of "bodily injury" and "property damage" in the INA policies are identical to the Aetna policies. In addition, the pollution exclusion clauses in the INA policies contain language identical to the Aetna policies; however, the INA policies also include additional language after the first paragraph. Thus, the INA policies exclude coverage for bodily injury or property damage arising out of the release of pollutants:

> (a) at or from premises owned, rented or occupied by the named insured;
>
> (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;
>
> (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or
>
> (d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:
> (i) if the pollutants are brought on or to the site or location by or for the named insured in connection with such operations; or
> (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. Analysis

### A. Motion for Summary Judgment

#### 1. Duty to Defend

■ An insurer's duty to defend is determined by examining the allegations of the underlying complaint against the insured. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 102 Mich.App. 136, 301 N.W.2d 832 (1980). However, the duty is not limited by the precise language of the complaint; the insurer should determine whether coverage is possible by looking behind the allegations. *Id.* at 142, 301 N.W.2d at 835.

■ The duty to defend is broader than the duty to pay. *Pattison v. Employers Reinsurance Corp.*, 900 F.2d 986, 989 (6th Cir.1990). It extends to allegations which are groundless, false, or fraudulent; it extends to allegations that even arguably come within policy coverage. *Id.* at 989–90; accord *Capitol Reproduction, Inc. v. Hartford Ins. Co.*, 800 F.2d 617, 620 (6th Cir.1986). "An insurer has a duty to defend, despite theories of liability asserted against any in-

sured which are not covered under the policy, if there are *any* theories of recovery that fall within the policy." *Detroit Edison*, 102 Mich.App. at 142, 301 N.W.2d at 835 (emphasis added). That is, if coverage is provided for some claims in the underlying suit, the insurer must defend all of the claims in underlying suit. If there is doubt regarding whether the insurer has the duty to defend, the doubt must be resolved in favor of the policyholder. *Id.; accord American Bumper and Mfg. Co. v. Hartford Fire Ins. Co.*, 207 Mich.App. 60, 68, 523 N.W.2d 841, 844 (1994), *appeal dismissed*, 546 N.W.2d 251 (1996) (Table).

#### 2. General Rules of Interpretation

■ Under Michigan law, if an insurance contract is unambiguous, it should be interpreted according to its plain meaning. *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654, 505 N.W.2d 553, 557 (1993); *Farm Bureau Mut. Ins. Co. of Mich. v. Hoag*, 136 Mich.App. 326, 332, 356 N.W.2d 630, 632 (1984), *leave to appeal denied*, 422 Mich. 920 (1985). Any ambiguity in an insurance policy should be interpreted against the insurer/drafter and in favor of the insured. Accordingly, technical constructions are not favored. *DeLand v. Fidelity Health & Accident Mut. Ins. Co.*, 325 Mich. 9, 19, 37 N.W.2d 693, 697 (1949).

■ Exclusion clauses are strictly construed against the insurer. *Farm Bureau Mut. Ins. Co. v. Stark*, 437 Mich. 175, 181, 468 N.W.2d 498, 501 (1991). *Accord Reurink Bros. Star Silo, Inc. v. Maryland Cas. Co.*, 131 Mich.App. 139, 146–47, 345 N.W.2d 659, 663 (1983). Further, the insurer bears the burden of proving that an exclusion clause applies. *Upjohn Co. v. Aetna Cas. & Sur. Co.*, 850 F.Supp. 1342, 1345 (W.D.Mich.1993). *Accord Morrill v. Gallagher*, 370 Mich. 578, 587, 122 N.W.2d 687, 691 (1963). Finally, an insurance policy should be read as a whole and a court should interpret it to give effect to all of its provisions. *Johnston v. Miller*, 326 Mich. 682, 692, 40 N.W.2d 770, 774 (1950).

### 3. Pollution Exclusion Clause Applies to Underlying Claims for Trespass, Nuisance, Mental Anguish, and Medical Payments

 Aetna and INA contend that Dow seeks coverage for underlying claims relating to the pollution at various sites. The insurance policies covering Dow contain an absolute pollution exclusion clause; the insurers claim that the clause is unambiguous and should be enforced. Generally, Michigan courts have found that pollution exclusion clauses are unambiguous. For example, in *Protective National Ins. Co. of Omaha v. Woodhaven,* 438 Mich. 154, 476 N.W.2d 374 (1991) the court held that the insured's claim for policy coverage for personal injury due to pesticide spraying was excluded under the pollution exclusion clause. The court found the clause was unambiguous and the insurer was not obligated to defend or indemnify the policyholder.

Dow contends, however, that the pollution exclusion clause does not exclude coverage for personal injury due to trespass, nuisance, and emotional injury. The Aetna and INA policies cover "all sums which [Dow] shall become legally obligated to pay as damages because of ... personal injury [and] ... property damage." "Personal injury" is defined as bodily injury, shock, or mental anguish or "injury arising out of false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction or other invasion of the right to private occupancy...."

The Sixth Circuit rejected a similar claim by an insured in *Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015 (6th Cir.1995). In that case, the Michigan Department of Natural Resources instituted an administrative action against the insured, claiming that the insured was a potentially responsible party for contamination of the local water supply. The insured made a claim under its insurance policy, arguing that despite the pollution exclusion clause, the policy covered the claim because it was a claim for "wrongful entry or eviction or other invasion of the right of private property." The Sixth Circuit held that to extend the personal injury coverage to cover such a claim would render the pollution exclusion clause meaningless.[8] The court explained that the coverage for the invasion of property rights must be read in the context of the other intentional torts covered by the policy. "Read in the context of these other enumerated torts, the provision here could not have been intended to cover the kind of indirect and incremental harm that results to property interests from pollution." *Id.* at 1022 (quoting *County of Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 612 N.Y.S.2d 345, 349, 634 N.E.2d 946, 950 (1994)).

The *Harrow* court also relied on *Titan Corp. v. Aetna Cas. & Sur. Co.,* 22 Cal.App. 4th 457, 475, 27 Cal.Rptr.2d 476, 487 (1994). In that case, the court examined whether the insured could reasonably expect insurance coverage for environmental contamination under the personal injury coverage provision. "The term 'other invasion of the right of private occupancy' draws meaning and content from the preceding language: 'wrongful entry or eviction.' Such language connotes disruptions of the ability of a landowner to actually occupy his property, not mere injuries to property." The court applied the principle of ejusdem generis: where general words follow specific terms, the general words should be read as applying to the specifically enumerated class of items. *Id.* at 474, 27 Cal.Rptr.2d at 486. The court found that it was unreasonable to expect groundwater contamination to harm an occupancy right.

---

8. The Sixth Circuit relied on *A.J. Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203 (5th Cir. 1991) (pollution exclusion clause applied and personal injury clause did not cover pollution property damage) and *W.H. Breshears, Inc. v. Federated Mut. Ins. Co.,* 38 F.3d 1219 (Table), 1994 WL 577258 (9th Cir. Oct. 17, 1994) (same) (Aetna Ex. K). The court sharply criticized the First and Seventh Circuit cases that reached the opposite conclusion as "superficial" and "curious" decisions. 64 F.3d at 1025 (discussing *Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265 (1st Cir.1990) and *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037 (7th Cir.1992)). The *Titan* case failed to harmonize its holding with the pollution exclusion clause; the *Pipefitters* case held without explanation that the argument that the pollution exclusion clause applied was "disingenuous" and did not "warrant discussion."

Dow argues that *Harrow* should not apply to underlying claims by individuals specifically alleging trespass or nuisance and that *Harrow* should be limited to underlying claims of contamination by a government entity. The distinction Dow attempts to make is unsupported. While *Harrow* did deal with a claim by a government entity, the Sixth Circuit's reasoning in *Harrow* was not so limited. It applies equally to individual trespass and nuisance claims. As the *Harrow* court explained, the invasion of property clause deals with disruptions of occupancy and the harm resulting from dispossession of property, not with environmental contamination and the associated incremental and indirect harm. To interpret the policy otherwise would nullify the pollution exclusion clause.[9] Moreover, *Harrow* expressly relies on *County of Columbia*, a case dealing with underlying claims by individuals who alleged trespass and nuisance and on *Breshears*, a case dealing with underlying claims by adjoining landowners of property damage. *Harrow*, 64 F.3d at 1022–23.

Dow makes a similar argument with regard to underlying claims for shock or mental anguish. Dow claims that the personal injury provision specifically provides coverage and that the pollution exclusion does not apply. The *Harrow* analysis applies here as well. The policy provides coverage for personal injury which includes shock and mental anguish. However, the pollution exclusion clause excludes coverage for bodily injury caused by pollution. Bodily injury includes shock and fright. *Meridian Mut. Ins. Co. v. Hunt*, 168 Mich.App. 672, 681, 425 N.W.2d 111, 115 (1988). Further, the pollution exclusion clause is an endorsement which modifies the underlying policy. *Hawkeye–Security Ins. C. v. Vector Const. Co.*, 185 Mich.App. 369, 380, 460 N.W.2d 329, 334 (1990). Dow's interpretation would render the pollution exclusion meaningless. To give effect to all of the policy provisions, the court must interpret the pollution exclusion clause as excluding coverage for mental anguish and shock.

Dow also claims that it is entitled to insurance coverage under the INA policies for medical payments. The INA policies provide coverage for "all reasonable medical expense incurred ... for each person who sustains bodily injury caused by an occurrence." The *Harrow* analysis again applies. The pollution exclusion precludes coverage for bodily injury due to pollution. To interpret the medical payments clause to provide coverage would effectively nullify the exclusion clause. A court should read the insurance policy as a whole and give effect to all of its provisions. *Johnston*, 326 Mich. at 692, 40 N.W.2d at 774.

## 4. Pollution Exclusion Clause Applies Because Underlying Claims are Pollution Related

Dow also argues that summary judgment based on the pollution exclusion clause is inappropriate without an analysis of the more than 350 sites to determine whether the substances Dow disposed there were "pollutants" as defined by the exclusion. Dow contends that it is the insurers obligation to bring forth evidence that the exclusion applies to each of the sites.

Dow misinterprets the burden of bringing forth evidence on a motion for summary judgment. The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1357.

The insurers have met their initial burden. Aetna and INA point out that Dow admitted in its counterclaim that the claims for which it seeks coverage are pollution related. Dow's first amended counterclaim seeks a declaration of the insurers' obligations and seeks damages "with respect to Dow's actual and/or potential liabilities for property damage, bodily injury and personal injury allegedly resulting from air, groundwater, surface

**9.** Dow also relies on *Titan v. City of Keene* and *Pipefitters*, cases specifically rejected in *Harrow*.

*See* footnote 7, *supra*.

water and/or soil contamination at various sites...."

Dow argues that its reference to the underlying claims as claims relating to "contamination" should not be determinative of whether the underlying claims in fact relate to contaminants excluded from insurance coverage. In support of this contention, Dow cites *In re Hub Recycling, Inc.*, 106 B.R. 372 (D.N.J.1989). In *Hub Recycling*, the policyholder was a recycling company that was sued by a neighboring company for dumping on the neighbor's land. Hub sought insurance coverage for the claim. The court held that the pollution exclusion clause only barred coverage if it was determined that the recyclable materials were contaminants or irritants. The materials were not inherently toxic. The court noted that the insured's affidavits and prior testimony referring to the recyclables as "contaminants" did not constitute binding admissions or expert testimony. *See also Minnesota Mining and Mfg. Co. v. Walbrook Ins. Co.*, 1996 WL 5787 (Minn.App. Jan. 9, 1996) (insured's use of the word "contaminant" in documents did not control whether the release of beads from static eliminators constituted pollution under policy exclusion).

▮▮▮▮▮ Dow is correct that its counterclaim is not dispositive nor is it a binding admission. Dow's counterclaim, however, does constitute sufficient evidence to satisfy the insurers' initial burden of showing no genuine issue.

▮▮▮▮▮ Once the insurers met their burden, the burden shifted to Dow to demonstrate a material issue of fact. With regard to the vast majority of the contaminated sites, Dow failed to come forward with any specific facts showing that there is a genuine issue for trial. Dow does bring forth facts related to six specific sites. Ordinarily, summary judgment would be appropriate with regard to every site for which Dow failed to raise a specific issue of fact. However, due to the fact that over 350 sites are involved in this litigation, the parties and the court have determined that the most efficient way to

proceed is to try issues by example. Accordingly, the court will construe Dow's allegations of fact issues regarding the six specific sites as raising fact issues applicable to all analogous sites.

▮▮▮▮ The Aetna and INA policies define pollutants as follows:

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Dow argues that there are genuine issues of fact regarding whether the underlying claims are covered by the pollution exclusion clause. Dow contends that the pollution exclusion clause is ambiguous because a portion of the materials that Dow disposed of at the sites were useful products or nonhazardous wastes, not "pollutants." Dow gives the following examples:

1. *Vertac site:* Dow shipped a finished product, a component of dioxin used to make pesticides, to this manufacturing facility.

2. *Mount Holly, Monahans, and Midland (Texas) sites:* At these three sites, Dow's liability is based in part on underground storage tanks that leaked fuel, not waste products.

3. *Schilling site:* Dow alleges that it disposed of both hazardous and nonhazardous material at this site. The nonhazardous material consisted of styrofoam, polystyrene, and "other useful products."

4. *Conalco site:* Dow alleges that it disposed of both hazardous and nonhazardous material at this site as well. The nonhazardous material consisted of rubble, debris, and "other nonhazardous industrial wastes." [10]

The insurers claim that the policies exclude coverage for bodily injury or property damage arising out of the actual, *alleged* or threatened discharge, dispersal, release, escape or contamination by pollutants. That is, if the underlying claim even alleges that Dow discharged pollutants, insurance coverage is excluded. Thus, with regard to the Schilling

---

10. Dow's allegations regarding "other useful products" at the Schilling site "other nonhazard-

ous industrial wastes" at the Conalco site are too vague to raise a genuine issue of material fact.

site for example, the federal government filed a complaint against Dow for disposal or treatment of hazardous substances at the Schilling Landfill. The underlying claim alleges damage due to the alleged contamination by pollutants, and policy coverage should be excluded.

This analysis is in error, however, because an insurer's duty to defend is determined by looking behind the allegations of the underlying complaint. *Detroit Edison,* 102 Mich. App. 136, 142, 301 N.W.2d 832, 835 (1980). Thus, the court must examine whether Dow raises a genuine issue that the underlying claims represented by these six sites relate to nonpollutants.

Dow claims that the materials it released at the Vertac site were finished products used to make pesticides and that one substance released at Mount Holly, Monahans, and Midland was fuel leaked from underground storage tanks. Dow alleges that the dioxin component and the fuel were finished and useful products, not wastes.

Dow fails to raise a genuine issue with regard to these sites because the Aetna and INA insurance policies define pollutant as "any" irritant or contaminant. They do not exclude "useful products" or "finished products." The bulk of the case authority, including Michigan state court cases, holds that oil, gasoline, and other petroleum products are toxic by nature and therefore they constitute a contaminant when released into the environment. *See, e.g., Riverside Oil, Inc. v. Federate Mut. Ins. Co.,* 1994 WL 904293, 1994 U.S. Dist. Lexis 20394 (C.D.Ill.1994) (court held gasoline was toxic by nature and constituted pollutant; irrelevant that gasoline is useful product). *Guilford Ind., Inc. v. Liberty Mut. Ins. Co.,* 688 F.Supp. 792, 794 (D.Me.1988) (fuel oil was pollutant under exclusion clause), *aff'd,* 879 F.2d 853 (1st Cir. 1989) (Table); *Union Mut. Fire Ins. Co. v. Hatch,* 835 F.Supp. 59, 65–66 (D.N.H.1993) (gasoline leaked from underground tank was pollutant); [11] *Merrill Comm. School Dist. v. Everett Cragg & Sons Well Drilling, Inc.,*

No. 93–55592–CZ–2 (Mich.Cir.Ct., July 25, 1995) (fuel oil released from underground tank was pollutant) (Aetna's Reply Ex. 6); *Doyen v. Traveler's Ins. Co.,* No. 90–4091–CK (Mich.Cir.Ct., Aug. 8, 1991) (petroleum products discharged into soil or groundwater are pollutants) (Aetna's Ex. G). *But see American States Ins. Co. v. Kiger,* 662 N.E.2d 945, 949 (Ind.1996) (where insured is gas station, term "pollutant" was ambiguous and did not obviously include gasoline); *Garthwait v. Bankers Standard Ins. Co.,* 1993 WL 108103 (Conn.Super.Ct. Mar. 22, 1993) (without explanation court held that whether heating oil was "contaminant" was fact issue) (Dow Ex. D).

"Pollutant is defined as anything that pollutes, especially any gaseous, chemical o organic waste that can contaminate air, soil, or water. *The American Heritage Dictionary, New College Edition.* Again, it cannot reasonably be argued that petroleum products discharged into the soil or groundwater are not pollutants when released into the soil or groundwater." *Doyen,* slip op. at 4. *See also Merrill,* slip op. at 4–5 ("Pollute is defined as 'to contaminate (an environment) esp. with man-made waste.' *Websters Ninth New Collegiate Dictionary* (1989).")

Similarly, under Michigan case law a pesticide has been held to be a pollutant. *Protective National Ins. Co. of Omaha v. Woodhaven,* 438 Mich. 154, 476 N.W.2d 374 (1991). *See also Prudential—LMI Commercial Ins. Co. v. Meadowood Condominium Assoc.,* 1992 WL 189490 (E.D.Pa.1992) (insecticide held to be pollutant); *but see Davis v. Conn. Union Ins. Co.,* 1993 WL 34438 (Conn.Super.Ct. Feb. 5, 1993) (whether termite repellant was a pollutant was fact issue) (Dow Ex. E).

Just because a chemical is the policyholder's "finished product" does not mean that it is not a pollutant under the pollution exclusion clause. *See International Surplus Lines Ins. Co. v. Anderson Development,* No. 86–60392, 1987 U.S. Dist. Lexis 13987 (E.D.Mich. Oct. 17, 1987) (policyholder manu-

---

11. The courts in *Guilford* and *Union Mutual* noted that the applicable state statutes in Maine and New Hampshire respectively defined fuel oil and gasoline as hazardous waste. The Michigan underground storage tank statute similarly defines petroleum products like fuel oil and gas as regulated substances. Mich.Comp.Laws Ann. § 324.21303(3). The statute defines "contamination" as the presence of a regulated substance in soil or groundwater. *Id.* § 324.21302(3).

factured chemical called Curene 442 which was released into environment when company discharged its waste; Judge LaPlata presumed without discussion that chemical was pollutant under exclusion clause) (Aetna Reply Ex. 5).

 Dow also contends that part of its liability on the underlying claims at the Schilling and Conalco sites relates to nonhazardous waste. Dow asserts that it disposed of styrofoam and polystyrene at the Schilling site and rubble and debris at the Conalco site. Dow argues that the pollution exclusion clause does not apply to inherently nonhazardous materials.

Depending on the specific circumstances of the case, some courts have ruled in favor of the insurer and have held that nonhazardous and nontoxic materials released into the environment are pollutants under a pollution exclusion clause, while other courts have ruled in favor of the insured, holding that nonhazardous wastes are not "pollutants" or that the pollution exclusion clause is ambiguous with regard to nonhazardous wastes and thus must be interpreted in favor of the insured.

A close look at the case law reveals that the only case directly analogous to this one is *American Contracting & Management Corp. v. Liberty Mut. Ins. Co.*, No. 164506, 1995 WL 854725 (Mich.Ct.App. June 13, 1995) (Aetna Reply Ex. 3). In that case, the Michigan Court of Appeals interpreted the pollution exclusion clause as excluding coverage for the disposal of nonhazardous materials. However, the court's decision contains no analysis.

In that case, American Contracting contracted with Meijer, Inc. to build a bioreclamation berm for the collection of oil-soaked soil. American Contracting deposited other materials in the berm as well, including hazardous materials such as toxic chemicals and nonhazardous materials such as tree stumps, metal banding, fencing, and construction wastes. The DNR subsequently inspected the site and ordered Meijer to clean up. Meijer in turn filed suit against American Contracting. American Contracting filed suit against its insurers claiming that the pollution exclusion in its insurance policies did not apply because part of its liability was based on its disposal of nonhazardous wastes. The Michigan Court of Appeals rejected this argument without explanation, holding that the underlying claim against the insured related solely to pollution, and the pollution exclusion clause was unambiguous.

In *Crabtree v. Hayes–Dockside, Inc.*, 612 So.2d 249 (La.App. 4th Cir.1992), *writ denied*, 614 So.2d 1257 (La.1993), the court held that polyvinyl chloride (PVC plastic) was a pollutant even though it was nonhazardous. The court emphasized that the pollution exclusion clause did not just exclude coverage for damage due to hazardous or toxic substances. It excluded coverage for damage due to the release of any irritant or contaminant. The plaintiffs in the underlying claim alleged that the policyholder's release of PVC dust irritated their skin, eyes, nose, and throat. The PVC product was labelled with warnings that the product was an irritant and that users should avoid inhaling it. Accordingly, the court held that the PVC was an irritant or contaminant and was excluded from policy coverage.

The insurers have the more persuasive argument on this issue. As the insurers point out, when applying Michigan law, this court is obligated to determine what Michigan state courts would decide. *American Contracting* is the only Michigan case regarding this issue; there, the court held that nonhazardous construction waste and tree stumps constituted pollutants under the exclusion clause. While the *American Contracting* case contains no analysis, logic leads this court to the identical conclusion, that the pollution exclusion clause includes nonhazardous wastes.

The pollution exclusion clause excludes coverage for "any" contaminant or irritant. When released into the environment, styrofoam, polystyrene, rubble and debris all constitute contaminants or irritants.

The case law cited by Dow is all distinguishable. Dow contends that whether a substance is a pollutant is a fact issue. However, the cases cited by Dow are distinguishable from this case. The majority of the cases that Dow relies on hold that the pollution exclusion clause applies only to industri-

al pollution and not to a residential situation. *See, e.g., Minerva Enterprises, Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993) (definition of pollutants ambiguous when applied to waste from septic tank; pollution exclusion applied only to industrial waste, not residential sewage); *Atlantic Mut. Ins. Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762 (1992) (pollution exclusion applied to industrial waste, thus lead paint in home was not pollutant); *General Accident Ins. Co. of Amer. v. Idbar Realty Corp.*, 163 Misc.2d 809, 622 N.Y.S.2d 417, 419 (N.Y.Sup. Ct.1994) (same). *See Weaver v. Royal Ins. Co. of America*, 674 A.2d 975 (N.H.1996) (pollution exclusion clause was ambiguous with regard to lead paint in home).[12] These cases are not applicable to Dow's situation, which relates solely to industrial pollution.

Dow also cites *In re Hub Recycling Corp.*, 106 B.R. 372 (Bankr.D.N.J.1989) where the court held that a fact issue existed whether debris and recyclables were within the pollution exclusion. The court pointed out that the insurer knew that the insured was in the business of recycling. Thus, the court questioned whether the parties intended to exclude coverage for the disposal of recyclables.[13] *Accord American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 949 (Ind.1996) (where insured was gas station, term "pollutant" was ambiguous and did not obviously include gasoline). Unlike *Hub Recycling*, Dow was not in the business of disposing of recyclables and waste. Thus, the key issue presented there of the parties' intent is not a factor in this case.

Finally, Dow cites *Minnesota Mining and Mfg. Co. v. Walbrook Ins. Co.*, 1996 WL 5787 (Minn.App. Jan. 9, 1996) in support of its claim that nonhazardous materials are not pollutants. In *3M*, the insured was subject to a claim that the adhesive it used to adhere beads to static eliminators failed. The beads contained radioactive material. The court found that the beads were not pollutants because when the beads came unglued from the static eliminators, their release did not affect the surrounding air, soil, or water. Dow cannot reasonably argue that the styrofoam and polystyrene at the Schilling site and rubble and debris at the Conalco site did not affect the surrounding environment.

Moreover, as Aetna emphasized at oral argument, Dow concedes that at every site there is a hazardous waste component to the underlying claim. The driving force behind the underlying claims is the damage caused by the hazardous waste. To rule that the insurers have a duty to defend because some component of the industrial waste does not come within the terms of the pollution exclusion clause would be to give the insurance policies a strained construction under these circumstances. Technical constructions are not favored. *DeLand*, 325 Mich. at 19, 37 N.W.2d at 697.

Such a technical construction would also require the court to make fine distinctions between what constitutes hazardous waste as opposed to nonhazardous waste. The court might have to choose between conflicting federal and state definitions of waste and might have to weigh scientific evidence and expert testimony regarding the chemical composition and breakdown of waste materials and regarding the effect the nonhazardous materials have on pollution from the hazardous materials at various sites. For example, in *Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal.App. 4th 457, 27 Cal.Rptr.2d 476 (1994), there was evidence that the government authority required the insured to clean up nonhazardous wastes to avoid a "sump effect." A sump effect is where the nonhazardous waste forms a conduit enabling the hazardous wastes to more easily pollute the ground

---

12. Dow also cites *Round Rock Plaza Venture v. Maryland*, 1996 WL 14098 (Tex.App. Jan. 17, 1996) (court held that pollution exclusion clause did not unambiguously exclude coverage for damage caused by sewage because it did not define terms irritant or contaminant). The *Round Rock* opinion was withdrawn from Westlaw on the grant of a motion to dismiss appeal.

13. Dow also erroneously relies on *Bituminous Cas. Corp. v. Advanced Adhesive Technology, Inc.*,

73 F.3d 335 (11th Cir.1996). This case did affirm summary judgment in favor of insured because pollution exclusion clause was ambiguous with regard to emission of fumes from adhesive product manufactured by insured. However, the court explicitly did not address whether the fumes constituted pollutants under the policy. 73 F.3d at 339 n. 4.

water. *Id.* at 471 n. 12, 27 Cal.Rptr.2d at 484 n. 12. Further, in the *Titan v. Aetna* case, some of the waste included bricks that had to be sampled to determine if they were furnace bricks which contained heavy metals, and thus required special handling. *Id.* at 457 n. 4, 27 Cal.Rptr.2d at 471 n. 4. This cannot be the type of fine distinction the parties intended to make when they agreed to the pollution exclusion clause. The language of the clause, "any ... irritant or contaminant" is broad and does not such mandate a strained construction.

It also should be noted that if the court were to rule as Dow requests, that the pollution exclusion clause does not apply to nonhazardous wastes, the insurers would be required to defend the entire underlying claim where any portion of the claim related to nonhazardous substances. *Detroit Edison,* 102 Mich.App. at 142, 301 N.W.2d at 835 (when insurer is obligated to defend any part of underlying claim, insurer is obligated to defend entire underlying claim.) Thus, a ruling that the pollution exclusion clause does not exclude coverage for damage due to nonhazardous wastes would permit an insured to circumvent the terms of the policy by including some nonhazardous materials with its disposal of hazardous materials. It is unreasonable to argue that this is what the parties intended.

**B. Planet Insurance Company's motion for leave to apply motion for summary judgment to Fireman's Fund's cross claims**

■ On November 31, 1993, Fireman's Fund filed cross claims against the other insurance companies for subrogation and contribution. However, the case management order No. 2 stays action on all cross claims until further order of the court. Planet requests that the court lift the stay as to Fireman's Fund's cross claims against Planet, and apply the summary judgment against Fireman's Fund.

Planet settled its suit with Dow, and Dow agreed to dismiss its claims against Planet. Planet argues that in asserting a claim for subrogation and contribution, Fireman's Fund has no greater rights than Dow. Because Planet settled with Dow and because the pollution exclusion clause applies, Planet is entitled to summary judgment against Fireman's Fund on its cross claim.

Fireman's Fund argues that the stay should not be lifted as to its cross claim, because to do so would encourage piecemeal litigation of the cross claims. Under the terms of the Case Management Order No. 2, the parties and the court intended to litigate the claims between Dow and the insurers first, and then subsequently to litigate the claims between the insurers. Fireman's Fund argues that this merely requires Planet to wait until a subsequent phase of the case for the court to apply its orders on legal issues to the cross claims. Fireman's Fund does not raise any legal argument why Planet should not be dismissed if the pollution exclusion applies. Thus, because under subrogation and contribution theories Fireman's Fund has no greater rights than Dow, and the court has determined that the pollution exclusion clause bars Dow's claim, the court grants summary judgment against Fireman's Fund on its cross claim against Planet.

**C. Fireman's Fund's Motion to File Third Party Complaint and Amended Cross Claims**

■ Fireman's Fund seeks to file a third party complaint against three insurers who are not currently part of this lawsuit—Timber Insurance Limited, Dorinco Reinsurance Company, and Dorintal Reinsurance Limited. These companies are all wholly owned subsidiaries of Dow and each issued pollution liability policies to Dow. Fireman's Fund desires to file a third party complaint for subrogation and contribution. Fireman's Fund also seeks to amend its cross claims against Dow to state additional claims due to Dow's failure to tender pollution liability claims to its subsidiary insurance companies, Timber, Dorinco, and Dorintal. Further, Fireman's Fund desires to amend paragraph 31 of its cross claims in order to add environmental claims that Dow has submitted to Fireman's Fund in 1995 and in 1996. No other party responded to this motion.

Third party complaints are governed by Federal Rule of Civil Procedure 14. Rule

14(a) permits a defendant to implead a third party who may be liable for part of the plaintiff's claim. The rule encourages efficiency by permitting related claims to be tried in one action. In order to promote this purpose, courts have held that Rule 14(a) should be liberally construed. *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 777 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987); *F.D.I.C. v. Loube,* 134 F.R.D. 270, 272 (N.D.Cal.1991). Whether to permit impleader is within the district court's discretion. 791 F.2d at 777. Accordingly, the court, in its discretion, hereby permits Fireman's Fund to implead Timber, Dorinco, and Dorintal as third party defendants.

■ Amendment of the cross claim is governed by Federal Rule of Civil Procedure 15, which provides that leave to amend shall be freely given. Thus, the court hereby grants Fireman's Fund's motion to amend its cross claims against Dow in order to add allegations related to Timber, Dorinco, and Dorintal and in order to add allegations related to Dow's 1995 and 1996 environmental liability claims.

## IV. Conclusion

For the reasons set forth above, the court hereby GRANTS Aetna Casualty & Surety Company and Insurance Company of North America's motion for summary judgment.

It is further ordered that Planet Insurance Company's motion for leave to apply motion for summary judgment to Fireman's Fund's cross claims is GRANTED.

It is further ordered that Fireman's Fund's motion to file third party complaint and amended cross claims is GRANTED.